[Civ. No. 19306.   Second Dist., Div. One.   June 15, 1953.]

GRACE M. ROST et al., Appellants, v. CHARLES O. BRYSON et al., Respondents.

Edward Henderson and Margaret Keller for Appellants.

Hal V. Hammons, Jr., and Robert R. Willard for Respondents.

SCOTT (Robert H.), J. pro tem.—Plaintiffs appeal from an adverse judgment in their action against defendant for money had and received.

Defendant does business as an escrow agent, and when plaintiffs undertook to purchase from its owner, one Berman,

a liquor store known as "Art's Bottle Shop," defendant was selected to handle the escrow.

Instructions provided that certain money was to be deposited by plaintiffs with defendant as the purchase price. A total of $10,000 was to be paid into escrow, the final payment due January 31, 1951. The agreement provided in part as follows: "The parties hereto agree that Bryson Escrow Company shall act as escrow agent for the parties, it being understood that such escrow agent shall in no case be liable for or cause to be made or make any examination or report of any state, county or city taxes, nor shall said escrow agent be liable for the payment of any social security tax, unemployment tax, sales tax, federal tax or any other tax which may be levied or leviable against said business or any other parties hereto, unless an actual claim has been filed against this escrow, and the seller will display to said buyer proper receipts and clearances showing payment of all of the above for which said seller may be liable and all of which shall be to the satisfaction of said buyer. The escrow agent shall, however, upon direction of the seller make payment of any claim for any of the above items, and shall pay the same from the funds so held by him or deposited with him when properly presented to him for payment. Out of the purchase price or consideration, you will pay the approved claims of the bona fide creditors of the licensee as shall file claims with you within ten days after the recording of the notice. Licensee will cause any unapproved claims to be withdrawn from escrow by the claimant. If the purchase price for the transfer of the license and the consideration for the other property involved herein is not sufficient to pay said claims in full, you will distribute said total consideration pro-rata to such creditors within a reasonable time after the completion of the transfer of said license. However, prior to such pro-rata distribution, licensee will obtain and deposit herein the consent of creditors to such pro-rata distribution.

"In the event of the full payment of creditors licensee will cause any unapproved claims to be withdrawn from escrow by the claimant or you will hold the amount of such claims or bills plus 50% thereof."

and: "Hold the Bill of Sale and other documents and cash deposited until February 1, 1951 at 10:00 o'clock A.M.

"At the expiration of said time, unless bills of creditors have been filed in excess of the funds deposited, deliver said

Bill of Sale to the buyer and deliver to seller, or order, the documents to which they may be entitled.

"After all bills are paid or adjusted, pay the balance by your check to Arthur Berman.

"Pay commission of $1350 to Ed Gerhardt at time all purchase money has been deposited in escrow, out of seller's funds."

On January 29, 1951, after the full $10,000, had been deposited in the escrow, defendant paid $1,350, to Ed Gerhardt, who was the business opportunity and real estate broker who had arranged the deal.

Creditors of the seller Berman had presented claims in excess of the total amount of $10,000 deposited, so that eventually an assignment for their benefit was made by Berman. The deal was withdrawn from the escrow handled by the defendant on March 29, 1951, and was consummated elsewhere between Berman's assignee and plaintiffs on May 21, 1951.

Plaintiffs brought suit to recover from the defendant the amount thus paid to the broker, claiming that the money deposited by plaintiffs had not become available for such payment. The trial court found in favor of defendant.

■ As above noted, the instructions provided that the commission should be paid "at time all purchase money has been deposited." There is no dispute that such deposit had been made. Plaintiffs contend, however, that the phrase "out of seller's funds" required defendant to wait until other provisions had been complied with and seller was entitled to the balance of the money on deposit.

A reading of the escrow instructions does not show that the seller, Berman, was to deposit any money with defendant in escrow, although the parties did agree to share escrow costs. Funds to pay the broker were to come from money deposited by plaintiffs. Defendant was authorized to pay other claims as noted in the portion of escrow instructions set out above, and to pay them out of money plaintiff had deposited as part of the purchase price. These were claims, not against plaintiffs, but against the seller.

The trial court found, in effect, that the words "out of seller's funds" meant that the broker's commission should be charged against funds that the seller would otherwise receive, and did not require that title to that money should have passed to the seller. That construction, in light of other language used in the escrow instructions was not unreasonable.

We do not find that any injustice follows this interpretation. Plaintiffs wanted to buy a liquor store. The broker secured an agreement from the owner to sell it to plaintiffs for a price which was $ 2,000 less than the asking price. Although difficulty was encountered because of seller's creditors, this was eventually resolved and plaintiffs secured the business they desired.

Plaintiffs made no provision in the new escrow for Gerhardt to get his money. Whatever money was available was used to pay off creditors of the business so that plaintiffs could have it, freed from those obligations. Thus buyers (plaintiffs), seller, and creditors have all benefited. Justice would seem to require that the broker be paid for his service which thus benefited plaintiffs and the others.

In evaluating plaintiffs' claim that they have been wronged, we note that plaintiffs have relieved seller Berman from any liability to repay this money paid by defendant to Gerhardt. When the sale was finally consummated between plaintiffs and Berman's assignee that agreement recited: "Each of the parties hereto hereby acquits, discharges and releases the other from any and all liabilities, credits, debts, causes of action of any kind or nature whatsoever, arising out of or in connection with the cancellation of the said escrow #1398, at the Bryson Escrow Company, Ventura, California, to date hereof."

Cases cited by appellants in resisting the trial court's construction of the contract are readily distinguishable from the instant case.

We observe that in the case of *Shreeves* v. *Pearson,* 194 Cal. 699, 708 [230 P. 448], it says: "The phrase 'close of escrow' is expressly and repeatedly used in relation to the performance of these conditions to be by each of said parties respectively performed." In the instant case buyers (plaintiffs) did not require as they did in the case of creditors' claims, that the escrow agent (defendant) should pay the broker his commission "upon direction of seller," out of funds deposited with him by the buyer, but they did direct him to pay the broker "at time all purchase money has been deposited in escrow." In other words the direction of the seller was included in the escrow instructions.

The factual situation was substantially different in *Montgomery* v. *Bank of America,* 85 Cal.App.2d 559 [193 P.2d 475], where the escrow agent altered a deed without authority and then delivered the void deed prematurely.

In *Hastings* v. *Bank of America*, 79 Cal.App.2d 627 [180 P.2d 358], the intended purchaser of real property deposited money in escrow toward the purchase price. The seller, after having agreed thus to sell the property, disposed of it to another purchaser, but wanted to keep the money deposited in escrow, to which they had not acquired title. In the instant case title to the business eventually passed to the buyers and the money paid to the broker was in fact paid out of sellers' funds in the sense that it was money that otherwise would have gone to seller or his creditors.

*Watts* v. *Mohr*, 86 Cal.App.2d 256 [194 P.2d 758], sheds no light on the case now before us, it being an action for specific performance in which the acts of the parties and not of the escrow agent were the basis of the controversy.

■ But, as is said in the final case referred to by appellants, ''A principle of construction well settled is that where one construction would make a contract unusual and extraordinary, and another construction, equally consistent with the language employed, would make it reasonable, fair, and just, the latter construction must prevail.'' (*Stoddart* v. *Golden*, 179 Cal. 663, 665 [178 P. 707, 3 A.L.R. 1060].

A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful (Civ. Code, § 1636).

The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other. (Civ. Code, § 1641.)

Repugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clauses, subordinate to the general intent and purpose of the whole contract. (Civ. Code, § 1652.)

■ ''When the construction given an instrument appears to be consistent with the true intent of the parties, as shown by the attendant facts and circumstances, another interpretation will not be substituted on appeal though it seem equally tenable.'' (*Wilson* v. *Brown*, 5 Cal.2d 425, 428 [55 P.2d 485].)

Judgment affirmed.

White, P. J., and Doran, J., concurred.