[Civ. No. 23394.   Second Dist., Div. One.   June 9, 1959.]

NORMAN B. FRANCIS et al., Plaintiffs and Respondents, v. LILLIAN R. EISENMAYER et al., Defendants; PAUL JAMES WILLIAMS et al., Cross-defendants and Respondents; SECURITY-FIRST NATIONAL BANK OF LOS ANGELES (a National Banking Association), Appellant.

Littlejohn, Callister & McNabb and E. Talbot Callister for Appellant.

Richards, Watson, Smith & Van Petten and Abe Mutchnik for Respondents.

LILLIE, J.—Plaintiffs, respondents herein, brought an action for damages for fraud and misrepresentation against defendants Williams who sold them a parcel of real property, and defendant Security-First National Bank of Los Angeles, appellant herein, who handled the escrow between them. As to the bank, plaintiffs alleged that an agent thereof falsely represented to them that if they would make their purchase through escrow nothing could be "wrong" with the property and they would be fully protected. Defendant bank cross-complained against both plaintiffs (purchasers) and defendants Williams (sellers) for its costs and attorneys' fees expended in the defense of the main action. The trial court, hearing the matter without a jury, rendered judgment in favor of the plaintiffs and against defendants Williams holding that they fraudulently concealed from plaintiffs that the property had been severed from a larger lot in violation of a city ordinance and was below the minimum size required by it, but denied recovery against the bank; and further held

that the bank was not entitled to recover attorneys' fees on its cross-complaint. Neither plaintiffs nor defendants Williams have appealed from the judgment. The bank appeals from that portion denying recovery of its attorneys' fees.

The record before us discloses the following evidence relating to the participation of appellant bank in the transaction between plaintiffs and defendants. Plaintiffs contracted to buy from defendants Williams a parcel of real property. Both plaintiffs testified that before retaining the bank, entering into any escrow, or executing escrow instructions they asked the escrow officer of appellant bank if they would be protected in all respects if they purchased through escrow, to which she replied: "That is what escrow is for. If there is anything wrong or anything hidden in the property, escrow will find it," and that if the property were purchased through escrow "everything would be all right." The escrow officer, although not directly denying she made the statement, said that she did not recall the conversation but that ordinarily she would not make such a statement.

After the purported conversation the plaintiffs entered into escrow with appellant bank, the parties executed escrow instructions, the escrow was completed and a policy of title insurance was delivered by appellant to plaintiffs, which policy excepted the effect of ordinances from its coverage. This exception afforded no protection to plaintiffs relative to the legality of the property's size or use under the city ordinance.

Approximately two years later, plaintiffs discovered that maintenance of the property was a violation of a municipal ordinance. They were ordered by the Department of Building and Safety to demolish a portion of the improvements and then found for the first time that the property had been previously severed from a larger lot in violation of an ordinance of the city of Los Angeles and was below the minimum size required by it. The trial court found that these facts had been fraudulently concealed from plaintiffs by defendants Williams and ordered judgment against them in the sum of $4,500. On the issue of the fraudulent concealment, it found in favor of appellant bank but denied recovery on its cross-complaint. Therein, it claimed against plaintiffs and defendants Williams payment of its expenses and attorneys' fees according to the escrow instructions. In support of its claim, appellant submitted evidence to the trial court that $1,100

was reasonable for services rendered in connection with the trial of the action.

The sole issue on this appeal is whether appellant bank is entitled to recover reasonable attorneys' fees. Its claim is predicated upon the escrow instructions which, among other things, provided:

"Should you before or after close of escrow receive or become aware of any conflicting demands or claims with respect to this escrow or the rights of any of the parties hereto or any money or property deposited herein or affected hereby, you shall have the right to discontinue any or all further acts on your part until such conflict is resolved to your satisfaction, and you shall have the further right to commence or defend any action or proceedings for the determination of such conflict. The parties hereto jointly and severally agree to pay all costs, damages, judgments and expenses including reasonable attorneys' fees suffered or incurred by you in connection with or arising out of this escrow, including, but without limiting the generality of the foregoing, a suit in interpleader brought by you."

The trial court in denying appellant affirmative relief found that the provision in the escrow instructions for attorneys' fees "was not intended to be, and is not, applicable to this action against said bank for oral misrepresentations allegedly made by said bank's employees in breach of a duty owing to plaintiffs independently of the escrow provisions or instructions and not relating to the terms or provisions of said escrow or the performance thereof"; and further "(I)t is not true that cross-defendants or any of them agreed to pay the fees of such counsel in this action, or that this action is an action arising out of said escrow within the meaning of said escrow instructions. The allegations contained in Paragraphs II, III, and IV of the First Affirmative Defense contained in the Answer of said Security-First National Bank of Los Angeles are true, but the escrow provisions alleged therein are applicable to said bank in its status as escrow holder only and not otherwise." (Finding XVIII.)

Appellant argues that since it "became involved in this litigation solely because of its position as the escrow holder in the transaction of purchase and sale between the plaintiffs and certain other defendants," under the accepted definitions of the term "arise" in Webster's dictionary and in *Schmidt* v. *Utilities Insurance Co.*, 353 Mo. 213 [182 S.W.2d 181, 154 A.L.R. 1088], and *Johnston* v. *Rothwell*, 54 Wyo.

99 [87 P.2d 13], the provision for attorneys' fees in the escrow instructions applies to the action at bar, the attorneys' fees having been incurred "in connection with or arising out of" the escrow. In support of its contention appellant relies upon *Terry* v. *Terry,* 70 Idaho 161 [213 P.2d 906], in which a bank was named as a defendant in an action to quiet title to certain funds deposited in escrow, clearly one brought to determine conflicting claims to the property and funds held by the bank and obviously a proceeding relating to the provisions of the escrow, in which the court awarded to it, and properly so, attorneys' fees and costs.

The fallacy of appellant's argument lies in the presumption that the bank became involved in the litigation at bar only because it was the escrow holder in the transaction out of which the dispute between respondents and defendants Williams arose. Neither the law, the record, nor a reasonable interpretation of the escrow instructions bears this out. The record before us discloses that the action against appellant bank was one for fraud, primarily charging that prior to the opening of the escrow the escrow officer of the bank fraudulently represented to plaintiffs that if they purchased through escrow they would acquire a good and marketable title to the property, free from any defects, and that the purchase of the property would be valid and lawful in all respects (third cause of action). In support of this allegation, both plaintiffs testified that *before* entering into the escrow or executing escrow instructions they inquired of the bank's escrow officer if they would be protected in all respects if they purchased through escrow, to which she replied that they would be, and if they bought the property through escrow "everything would be all right." Although the trial court found no misrepresentation on the part of appellant, it is nevertheless clear that the cause of action sued upon by plaintiffs, as charged in the complaint against appellant, arose out of the alleged oral misrepresentation made by the bank's agent prior to the time the escrow ever came into existence, not out of or "created by" or "brought into being by" the escrow in which the bank was the escrow holder.

A proper construction of the contract likewise rejects as not reasonable any contention that the litigation naming the bank was brought against it in its capacity as escrow holder. The action was brought against the appellant as a bank for a breach of duty independent of and not arising out of contract.

The attorneys' fees provision of the escrow instruction under which recovery is claimed contains two sentences, the first providing that the bank shall have the right to commence or defend actions to determine conflicting demands or claims to money or property deposited in escrow; the second, that the parties to the escrow shall pay reasonable attorneys' fees incurred by the bank in connection with ''or arising out of'' the escrow. These two sentences, as part of the same paragraph and without further reference elsewhere in the document, construed together would seem to provide for attorneys' fees only in the event of the litigation contemplated therein—arising out of conflicting demands made on the bank relative to the terms of the escrow, funds, property, or documents deposited therein, an action by the bank for breach of the terms of the escrow, or the bank's suit in interpleader. The gravamen of the instant action against appellant is fraud, the oral misrepresentation allegedly made by its agent in breach of a duty owing to plaintiffs independent of the escrow instructions, and does not relate in any way to the terms, provisions, property deposited, or the provisions of the escrow. The suit is one sounding in tort, brought against appellant not as an escrow holder, but as a bank; and since it alleges a cause of action for fraud it need not be based upon, or arise out of contract, nor does it. Liability is predicated on the alleged fact that the plaintiffs have been misled by the bank's agent to their prejudice. ■ A cause of action in tort may arise against a bank for misrepresentation of its duties and functions independent of any contractual relationship. (*Swasey v. de L'Etanche,* 17 Cal.App.2d 713 [62 P.2d 753].)

■ The trial court construed the attorneys' fees provision in the escrow instructions as not including in its contemplation actions such as the one at bar; and held it applicable to the bank only in its status as an escrow holder, and not otherwise. ■ The trial court's interpretation of this document appears to us to be entirely consistent with the intent of the parties; and it is clear that where ''the construction given the agreement by the trial court 'appears to be consistent with the true intent of the parties, and where that is so, the appellate court will not substitute another interpretation, though it seems equally tenable.' *Universal Sales Corp.* v. *California etc. Mfg. Co.,* 20 Cal.2d 751, 772 [128 P.2d 665].'' *Brogdex Co.* v. *Walcott,* 123 Cal.App.2d 575, at page 581 [267 P.2d 28] (*Rost* v. *Bryson,* 118 Cal.App.2d 489 [258 P.2d 72]; *Wilson* v. *Brown,* 5 Cal.2d 425 [55 P.2d 485]).

It could hardly be said that a buyer and seller executing escrow instructions would actually intend to bind themselves to pay attorneys' fees to an escrow holder in an action for misrepresentations made by it before it was ever retained in that capacity and the escrow entered into. What the parties no doubt had in mind and which appears to be reasonable, was that although the fee the escrow holder exacts for the ordinary service of transferring the documents and money between the parties to an escrow is adequate for that purpose, it is certainly not sufficient to cover any extraordinary services arising out of the situations it may face in its status as escrow holder, such as those mentioned in the instructions at bar, including conflicting demands concerning ownership of funds or documents in escrow or the relations and dealings between the parties therein, or a suit in interpleader, and that under such circumstances they should provide the escrow holder with reimbursement over and above the usual escrow fee. Without question, the intent of the parties to the escrow instructions is controlling (Civ. Code, §§ 1639, 1648; *H. S. Crocker Co.* v. *McFaddin,* 148 Cal.App. 2d 639 [307 P.2d 429]). In determining the propriety of the trial court's construction of the document, we also bear in mind that appellant presented to the parties for their signature the printed form of escrow instructions it had heretofore prepared. Therefore, any uncertainty therein must be construed against the party preparing the same (Civ. Code, § 1654; *Steeve* v. *Yaeger,* 145 Cal.App.2d 455 [302 P.2d 704]).

The construction placed by the trial court on the attorneys' fees provision of the escrow instructions appears to be entirely consistent with the intent of the parties, is a reasonable one and is hereby sustained.

The judgment is affirmed.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied June 29, 1959.