[Civ. No. 26161. Second Dist., Div. One. Nov. 19, 1962.]

DeLOSS R. JOHNSON et al., Plaintiffs and Appellants, v. RALPH MEYER, Defendant and Respondent.

Fahrney & Tipton for Plaintiffs and Appellants.

Norman D. Rose for Defendant and Respondent.

FOURT, J.—This is an appeal from that part of a judgment in favor of a cross-complainant for damages in an action involving a rental agreement.

Plaintiffs brought an action against Everett F. Boyette, Ruth J. Peterson, Hillner, Inc. and Ralph Meyer, assignee, for money under the terms of a lease made and entered into August 1, 1954, by and between plaintiffs as lessors and Hill-

ner, Inc. as lessee. Plaintiffs seek to recover $280 from Boyette, Peterson and Hillner, Inc. and $640 alleged to be due from all of the defendants for the reasonable use of the premises from March 29, 1960, to May 31, 1960. A cross-complaint was filed by Meyer, assignee, against the plaintiffs, wherein he asserted that plaintiffs were guilty of fraud and breach of contract and asked for damages in the sum of $7071.43.

A résumé of some of the facts is as follows: about August 1, 1954, appellants, as lessors, entered into a written lease with Hillner, Inc. as lessees, covering the premises located at 5907 East Second Street, Long Beach. The premises were used and occupied as a restaurant by Hillner, Inc. through March 31, 1960. On March 29, 1960, Hillner, Inc. made a general assignment for the benefit of creditors to Ralph Meyer, assignee, which was accepted by the assignee on March 31, 1960. The lease was not included in the assignment to Meyer.

The assignee sent a typical assignee letter to the respective creditors, a copy of which is set forth in the footnote.[1] The Johnsons did not sign and return the letter to the assignee.

After March 29, 1960, and prior to April 18, 1960, the Johnsons were advised of the general assignment by Hillner, Inc. to Meyer and that in order to realize the greatest amount of money possible for the creditors of Hillner, Inc. the assignee wanted to and would sell the business as a going concern. Further, that in order to sell the business as indicated it would be necessary for the prospective purchaser of the business to secure a lease, preferably with an option to purchase the premises; that to sell the business as a going concern and

---

[1] "The undersigned is assignee for benefit of creditors of the above-named corporation.

"We agree, subject to the following condition, to pay rent to your client on a per diem basis for the period of occupancy the Assignee will require for the administration of the assignment estate, with the understanding that the purchase agreement for the real property will continue to remain in effect until such time as the Assignee may investigate and make some definite arrangements with the landlord in connection therewith. The amount of rent to be paid by the undersigned will be based upon a per diem pro-ration of the existing monthly rental.

"The foregoing is condition [sic] upon the matter not going into bankruptcy, in which event the undersigned agrees to petition the United States District Court for approval to pay said rent. It is understood between us that the Assignee is not liable personally for the payment of rent, but will pay the same from the assignment assets and subject to court approval.

"We thank you for your cooperation in this matter and ask that you sign, on behalf of your client, and return to this office the attached carbon copy of this letter, signifying the acceptance of an agreement with the provisions of this letter."

thereby realize the greatest amount of money for the creditors the assignee wanted to secure a firm commitment from the Johnsons with reference to leasing the premises to a prospective purchaser.

Present counsel for the Johnsons were at all times with which we are now concerned the attorneys for the Johnsons and were authorized to act in behalf of the Johnsons in all matters under our consideration. On April 1, 1960, the assignee wrote a letter to Johnsons' attorney (hereinafter sometimes referred to as Tipton) with reference to the premises. After that letter was received by Tipton he had several talks with the assignee's agent, Ben Meyer (hereinafter sometimes referred to as Ben), with reference to the Johnsons offering to lease the premises to anyone interested in purchasing the business of Hillner, Inc. as a going concern. The assignee offered to remain in possession of the premises and to pay rent on a per diem basis for the occupancy if the Johnsons would offer a lease of the premises to a prospective purchaser of the business.

On April 18, 1960, Ben told Tipton that the assignee had a prospective buyer who could buy the assets if a lease was available and requested a letter from Tipton which would set forth the terms which would be acceptable to the Johnsons.

On April 18, 1960, Tipton, with the knowledge and consent of the Johnsons, wrote a letter to the assignee.[2]

The assignee after receiving the letter did on April 19, 1960, accept a bid for the sale of the business of Hillner, Inc.

---

[2] "April 18, 1960

"Ralph Meyer & Associates
225 South Oxford Avenue
Los Angeles, California.

"Re: Hillner, Inc., dba Everett Boyette's
Charcoal Broiler,
5907 East Second Street,
Long Beach, California.
Assignment No. 1237

"Dear Mr. Meyer:

"Confirming my telephone conversation with Mr. Ben Meyer, Mr. Johnson is ready to offer a five year or ten year lease to any prospective tenant who is willing to take over the business.

"The terms of the lease would be as follows: The first two (2) years at $300.00 per month; the balance of three (3) years or eight (8) years at $350.00 per month. Mr. Johnson will also include an option to buy at the end of the term of the lease for the sum of $40,000.00, payable $5,000.00 down and the balance at $350.00 per month including principal and interest with interest at the rate of seven per cent (7%).

"It is our understanding that you, as assignee, will pay the rent on a per diem basis from the time you took over this estate, March 28, 1960, until the matter is terminated. It is further our understanding, that Mr.

to Keimel and Ayers (sometimes hereinafter referred to as the Buyers) for the sum of $14,000; plus merchandise inventory at current Patterson prices, namely $1,862.21, plus payment of 1960-1961 personal property tax in the sum of $209.92, or a total of $16,071.43, all subject however to the Buyers obtaining a lease from the Johnsons in conformity with the terms outlined in the Tipton letter. The assignee accepted a $3,000 deposit from the Buyers on account of the sale price.

With the consent of the assignee and the Buyers, Dorothy Kendall acted as the attorney for each of them. On April 25, 1960, she, on behalf of the Buyers, talked with Tipton and told him that Keimel and Ayers had purchased the business of Hillner, Inc. based upon the lease commitment, and that the Buyers had accepted the lease commitment. On April 27, 1960, Tipton told Kendall that the Johnsons had given an option on April 27, 1960, to Richard Alexander to lease the premises and that they, the Johnsons, were in no position to enter into any kind of a lease with her clients. On April 28, 1960, upon instructions from the Johnsons, Tipton directed a letter[3] to the assignee.

---

Johnson will come in as a general creditor so far as the unpaid rent before the date you took over is concerned.

"Very truly yours,

FAHRNEY AND TIPTON,

/s/ DOUGLAS C. TIPTON

By Douglas C. Tipton"

[3] "April 28, 1960

"Ralph Meyer and Associates
225 South Oxford Avenue
Los Angeles, California

"Re: Hillner, Inc., dba Everett Boyette's
Charcoal Broiler,
5907 East Second Street
Long Beach, California
Assignment No. 1237

"Dear Mr. Meyer:

"On April 26, 1960 Mr. Johnson extended to Richard Alexander an option to lease the above premises, this option to be exercised on or before May 9, 1960 at 2:00 P.M.

"The terms as contained in our letter of April 18, 1960 are with-drawn until May 9, 1960.

"I will inform you of further developments as they occur.

"Very truly yours,

FAHRNEY AND TIPTON

/s/ DOUGLAS C. TIPTON

Douglas C. Tipton"

The option given to Alexander was exercised and he leased the premises.

The premises not being available for leasing to Keimel and Ayers, the assignee refunded the deposit which had been made. The Johnsons, by giving the option to Alexander, placed themselves in the position of not being able to carry out their promise to lease the premises in keeping with the terms of the April 18th letter.

The assignee was compelled to and did liquidate all of the assets of Hillner, Inc. by auction on May 20, 1960, after duly advertising the sale. The assets were auctioned for the sum of $9000, the highest bid obtainable at liquidation. The assets sold were not worth in excess of $9000 and were to be removed from the premises, the loss therefore being $7071.43.

The assignee could have liquidated the assets within not more than 20 days after the assignment. As it was he remained in occupancy of the premises for 50 days only because of and reliance upon the promise of the Johnsons to lease the premises if the assignee sold the business as a going concern. The reasonable rental value of the premises was $10 per day for a period of 20 days if there was to be liquidation, or for a period of 50 days if there was to be a sale of the business as a going concern.

In short, the assignee advised the Johnsons of the assignment of the business of their lessee to him, that it would be preferable to get as much money as possible out of the business for the creditors, and that the maximum money could be received if the business was sold as a going concern, that he would offer to sell the business as a going business if the Johnsons would offer to lease to any prospective purchaser. Conferences were held and conversations were had between the assignee or his representatives and the Johnsons' attorneys.

The judgment was for the cross-complainant assignee for $7071.43 less compensation for the occupancy by the assignee.

Appellants assert in effect that the evidence is not sufficient to support the findings of fact and they list as alleged errors the following: that the letter of April 18th and the prior negotiations and agreements merged into it did not constitute an offer, that the letter of the 18th did not evidence any promise for consideration upon which the assignee relied, that the talks between Kendall and Tipton did not constitute an acceptance by the assignee of any offer contained in the letter of the 18th, that the letter of the 18th was not a binding promise for a valid consideration to make a lease with an option to

purchase to any buyer of the business which the assignee might produce and that the court erred in assessing any damages against the Johnsons.

A complete reading of the record indicates without question that there was sufficient evidence to support each and every finding made by the court. It is not the function of this court to reweigh the evidence or to substitute our views for those of the trial court. The findings are to be liberally construed in support of the judgment. *Giorgi* v. *Conradi*, 199 Cal.App.2d 82 [18 Cal.Rptr. 588]; *Berniker* v. *Berniker*, 30 Cal.2d 439 [182 P.2d 557]; *Mashon* v. *Haddock*, 190 Cal.App.2d 151 [11 Cal.Rptr. 865].

 Furthermore as this court said in *Francis* v. *Eisenmayer*, 171 Cal.App.2d 221, 226 [340 P.2d 54]:

"[3] The trial court's interpretation of this document appears to us to be entirely consistent with the intent of the parties; and it is clear that where 'the construction given the agreement by the trial court "appears to be consistent with the true intent of the parties, and where that is so, the appellate court will not substitute another interpretation, though it seems equally tenable." *Universal Sales Corp.* v. *California etc. Mfg. Co.*, 20 Cal.2d 751, 772 [128 P.2d 665].' *Brogdex Co.* v. *Walcott*, 123 Cal.App.2d 575 [267 P.2d 28] at page 581 (*Rost* v. *Bryson*, 118 Cal.App.2d 489 [258 P.2d 72]; *Wilson* v. *Brown*, 5 Cal.2d 425 [55 P.2d 485])."

The contract which was sued upon was the contract made and entered into by and between Meyer, the assignee, and the Johnsons. There is no contention that the contract in question was between the Johnsons and the Buyers. The letter of the 18th of April was directed to Meyer, the assignee, and not to the Buyers.

No useful purpose would be served by reciting all of the particular testimony which supports the views of the trial judge. Suffice it to say, there is ample proof in the record. The appellants knew before they gave the option to Alexander that on April 19th the assignee had accepted their offer as set forth in their letter of April 18th. When they gave the option to Alexander on April 26th they effectively placed themselves in a position of being unable to perform their agreement with the assignee.

 When a promisor expressly repudiates a contract by an unequivocal refusal to perform he is guilty of an anticipatory breach. *Guerrieri* v. *Severini*, 51 Cal.2d 12, 19 [330 P.2d

635] ; *Bomberger* v. *McKelvey*, 35 Cal.2d 607, 613 [220 P.2d 729].

▮ Also, an anticipatory breach will result from an implied repudiation, where the promisor puts it beyond his power to perform. *Zogarts* v. *Smith*, 86 Cal.App.2d 165 [194 P.2d 143] ; Restatement of Contracts, § 318(b)(c).

There is no doubt that the assignee was damaged in the case in the amount awarded and that the judgment was proper under the circumstances.

Judgment affirmed.

Wood, P. J., and Lillie, J., concurred.