[Civ. No. 29531.    Second Dist., Div. Four.    Feb. 8, 1967.]

ROBERT McWILLIAMS, Plaintiff and Appellant, v. DON R. HOLTON et al., Defendants and Respondents.

Read & Miguelez and Edmund I. Read for Plaintiff and Appellant.

Kadison & Quinn and James R. Dunn for Defendants and Respondents.

FOX, J.*—This is an appeal from an order of dismissal following the sustaining of a demurrer to plaintiff's complaint without leave to amend.

In his second amended complaint, plaintiff attempted to state three causes of action. The first and second causes of action seek damages for breach of a written lease against defendant Holton; the third is for damages on the theory of conspiracy on the part of defendants Smith and Roger Wright to induce defendant Holton to breach said lease.

By an agreement dated July 6, 1960, defendant Holton leased certain premises to plaintiff for the purpose of carrying on a telephone answering service. At the time of making the lease the premises were occupied by defendant Smith, who was conducting a telephone answering service therein. The lease provided, *inter alia*, that "occupancy shall be given by lessor [Holton] to lessee [plaintiff], when present tennant [*sic*], namely George Smith, DBA Gardena Answerfone, shall vacate said premises." The lease also provided that "first months rent shall commence, when George Smith, DBA Gardena Answerfone, has vacated premises."[1]

Defendant Holton caused a notice to be served on Smith, "during the period between July 6, 1960 and August 4, 1960," terminating his tenancy 30 days thereafter and de-

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1] The lease was for a term of one year commencing with July 1, 1960, and ending June 30, 1961, at a rental of $55 per month. A deposit of $55 (receipt of which was acknowledged) was made to cover the last month's rent, *i.e.*, June 1961 provided all the terms and conditions of the lease had been met by the lessee up to June 30, 1961.

manding surrender of possession of the premises upon said expiration date.

On August 4, 1960, defendant Holton cancelled the lease with plaintiff by written notice, and thereafter withdrew his notice to Smith to vacate and surrender the premises and has permitted Smith and his successors to remain in possession ever since.

In his third cause of action plaintiff alleges that Holton was induced to cancel the lease through false and malicious statements made by defendants, Smith and Wright, in a conspiracy to prevent plaintiff from competing with Smith.

Plaintiff also states that, at the time of the breach of the agreement, he was under disability and continued under such disability until July 14, 1961, by reason of being in execution under the sentence of a criminal court for a term of less than life.

In arguing that the first and second causes of action[2] do not allege facts sufficient to state a cause of action, defendants over-simplify the problem at hand. They argue that vacation of the premises by Smith was a condition precedent to any duty of performance by Holton; that Smith did not vacate the premises, therefore there was no breach of the lease by Holton; that the lease was an integrated agreement, therefore parol evidence of any promise or representation by Holton made concurrently with or as an inducement to plaintiff to enter into the lease is not admissible in evidence, and that the lease contains no promise on Holton's part to evict Smith from the premises.

An examination of the lease leads unerringly to the conclusion that the parties intended to make a binding agreement. We must assume they were both acting in good faith. As businessmen they knew that to effectuate this lease plaintiff must have possession of the leased premises in order to carry on his business. They also knew that it was defendant, who had the master lease on the building of which these particular premises were a part, who was in a position to bring this phase of the matter to fruition. The lease recognizes both of these basic propositions for it provides: (1) "Occupancy shall be given by *lessor* to lessee" when the present tenant, Smith vacates the premises, and (2) the first month's rent was to commence at that time. (Italics added.)

---

[2]The two causes of action differ only in their theory of damages. Since the point was not raised on appeal we express no opinion as to whether all of the damages claimed under the first cause of action are recoverable. (See *Handley* v. *Guasco,* 165 Cal.App.2d 703 [332 P.2d 354].)

Now we have the lease executed and the $55 deposit made and acknowledged on July 6, 1960. What happened next? ". . . during the period between July 6, 1960 and August 4, 1960" Holton served notice on Smith that his tenancy expired 30 days after service of said notice on him and demand was made that he surrender possession of said premises upon said expiration date. What happened next? "On August 4, 1960 and prior to plaintiff's taking possession" Holton, without cause, gave written notice to plaintiff that the lease agreement was cancelled and "thereafter wrongfully withdrew his said notice to defendant, George Smith, to surrender said premises and permitted him and his successors to remain in possession ever since."

It is at this point that Holton effected a breach of his lease agreement with plaintiff. He violated the long established principle that ██ "In every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, which means that in every contract there exists an implied covenant of good faith and fair dealing." (*Universal Sales Corp.* v. *California etc. Mfg. Co.*, 20 Cal.2d 751, 771 [128 P.2d 665].) ██ "This covenant not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose. [Citations.]" (*Harm* v. *Frasher*, 181 Cal.App.2d 405, 417 [5 Cal.Rptr. 367].)

██ By giving Smith the 30-day notice to quit and surrender possession of the premises to him, Holton took an appropriate step to accomplish the purpose of the lease. When he thereafter, without cause, withdrew his 30-day notice to Smith to surrender the premises and permitted him and his successors to remain in possession, he violated the "implied covenant of good faith and fair dealing" and violated his "duty to refrain from doing anything which would render performance of the contract impossible." The giving of the written notice of August 4, 1960, by Holton to plaintiff cancelling the lease agreement completed Holton's repudiation of the lease and these acts constituted an anticipatory breach of the lease agreement whereby the taking of possession of the premises by plaintiff was made impossible by defendant's repudiation. ██ In *Johnson* v. *Meyer*, 209 Cal.

App.2d 736, the court pointed out at page 741 [26 Cal.Rptr. 157] that where "a promisor expressly repudiates a contract by an unequivocal refusal to perform he is guilty of an anticipatory breach. [Citations.]" ▇ Also, "'A party to a contract cannot take advantage of his own act or omission, to escape liability thereon.'" (*Ray Thomas, Inc.* v. *Cowan*, 99 Cal.App. 140, 145 [277 P. 1086].)

From the foregoing it is apparent that we have here no problem of parol evidence to explain either an ambiguity or uncertainty in the lease, or to explain the circumstances or any representations or promises in relation to the making of the lease. The matters actually involved are acts on the part of defendant Holton which establish an anticipatory breach on his part. These, of course, took place after the execution of the lease.

▇ We therefore conclude that the first and second causes of action allege sufficient fact to state a cause of action against defendant Holton and that his demurrer should have been overruled. No cause of action was attempted to be alleged against Holton in the third cause of action. His general demurrer was therefore properly sustained.

▇ Defendant Smith is not in privity of contract with either defendant Holton or plaintiff in connection with the lease on which the first and second causes of action are based. In fact, it does not appear that any attempt is made in either the first or second cause of action to plead any liability against defendant Smith.[3] His demurrer to these two causes of action was properly sustained.

▇ By his third cause of action plaintiff seeks to recover damages alleged to have been caused by Smith and Roger Wright who, pursuant to a conspiracy, wrongfully induced Holton to terminate the lease agreement with plaintiff. The basic allegations of this cause of action are found in paragraphs three and four which are quoted in the footnote.[4]

---

[3]Defendant Wright did not demur but filed an answer instead.

[4]Paragraph three reads: "Said Defendants, ROGER WRIGHT and GEORGE W. SMITH, did willfully and maliciously conspire with one another to induce the Defendant, DON R. HOLTON, to repudiate the agreement of lease with Plaintiff, hereinbefore referred to, by means of false and malicious statements concerning Plaintiff's character and ability to perform the obligations under said lease agreement and to conduct and operate such telephone answering service business."

Paragraph four alleges: "Said conspiracy was entered into by said Defendants, ROGER WRIGHT and GEORGE SMITH, with full knowledge that Plaintiff was experienced in said business and fully capable of carrying out the provisions of said agreement and operating such business, and

Allegations of damage caused plaintiff by Holton's wrongful cancellation of the lease agreement are incorporated from allegations on that subject in the first and second causes of action. It is clear that the allegations of this cause of action are sufficient to state a cause of action against the alleged conspirators. (*California Auto Court Assn.* v. *Cohn,* 98 Cal.App.2d 145 [219 P.2d 511]; *James* v. *Herbert,* 149 Cal. App.2d 741 [309 P.2d 91]; *Wise* v. *Southern Pacific Co.,* 223 Cal.App.2d 50 [35 Cal.Rptr. 652]; *Imperial Ice Co.* v. *Rossier,* 18 Cal.2d 33 [112 P.2d 631].) The trial court therefore erred in sustaining Smith's general demurrer to the third cause of action.

## Statute of Limitations

Finally, defendants argue that plaintiff's claims are barred by the applicable statutes of limitations.

█ Plaintiff alleged in paragraph seven of his first cause of action that on August 4, 1960, Holton, without cause, gave written notice to plaintiff that the lease agreement was cancelled. That was the date of the breach of the agreement and the accrual of plaintiff's cause of action against Holton. The statute of limitations then began to run. (*Hayes* v. *2831 Ellendale Place, Inc.,* 223 Cal.App.2d 362, 366 [36 Cal.Rptr. 94].) Since the first and second causes of action were founded upon an instrument in writing the four-year statute of limitation is applicable. (Code Civ. Proc., § 337, subd. 1.) The complaint was filed August 3, 1964. This was within the statutory period. Furthermore, plaintiff was under continuous disability from the time the cause of action accrued to July 14, 1961, whereby the statute was tolled for such period. (Code Civ. Proc., § 352, subd. 3; *Leeper* v. *Beltrami,* 53 Cal.2d 195, 208 [1 Cal.Rptr. 12, 347 P.2d 12, 77 A.L.R.2d 803].)

█ Plaintiff's third cause of action is based on an alleged conspiracy between defendant Smith and Roger Wright, as a result of which, they wrongfully induced Holton to breach his lease agreement with plaintiff to the latter's damage. The gravamen of the action is that pursuant to the conspiracy defendants wrongfully induced a breach of the agreement in question. Such conduct is a tort. (*Wise* v. *Southern Pacific Co.,* 223 Cal.App.2d 50 [35 Cal.Rptr. 652]; *California Auto*

---

was formulated with the intent to prevent Plaintiff from competing with the Defendant, GEORGE SMITH, in said business and as a result of such false and malicious statements, Defendant DON R. HOLTON, was induced to repudiate and cancel said lease agreement.''

454

*Court Assn.* v. *Cohn*, 98 Cal.App.2d 145, 149 [219 P.2d 511].) In *Wise* the court stated (p. 65) : "A tort action will also lie against third persons who pursuant to a conspiracy have wrongfully induced or procured the breach of a contract resulting in damages." In *Cohn* the court pointed out (p. 149) that: "Each participant in the wrongful act is responsible as a joint tort feasor . . . ."

■ Defendants argue that the one-year provision of section 340, subdivision 3, controls. They rely on this language in subdivision 3, ". . . or for injury to or for the death of one caused by the wrongful act or neglect of another. . . ." As pointed out in *Rubino* v. *Utah Canning Co.*, 123 Cal.App. 2d 18, 26 [266 P.2d 163], "It seems apparent that the legislative intent behind subdivision 3, section 340, Code of Civil Procedure, was . . . to provide a limitation of one year where personal injury or death results. . . ." This is not an action for damages "where personal injury or death" resulted. Therefore, the language relied on in section 340, subdivision 3 is not here applicable.

There is no language in section 337, subdivision 1, Code of Civil Procedure that warrants the application of the four-year statute of limitation to this tort action.

There is no specific statute that fixes the time within which a civil action growing out of a conspiracy must be brought. It would appear that an action on such a tort liability would come within the two-year provision of section 339, subdivision 1, Code of Civil Procedure as "[a]n action upon a . . . liability not founded upon an instrument of writing. . . ." (*Murphy* v. *Hartford Acc. & Indem. Co.*, 177 Cal.App.2d 539, 543, 544 [2 Cal.Rptr. 325] ; *McFaddin* v. *H. S. Crocker Co.*, 219 Cal.App.2d 585 [33 Cal.Rptr. 389]. In *Murphy* the court pointed out (p. 544) that an action for interference with contractual relations "is one for which the limitations period is not specifically provided and it has been stated that ' "[l]iability" as used in [§ 339, subd. 1] includes responsibility for torts, and "is applicable to all actions at law, not specifically mentioned in other portions of the statute." ' (*Lowe* v. *Ozmun*, 137 Cal. 257, 258 [70 P. 87] ; *Italiani* v. *Metro-Goldwyn-Mayer Corp.*, 45 Cal.App.2d 464, 467 [114 P.2d 370].)" Since defendants did not plead section 339, subdivision 1, we are not in a position to take it into account on this appeal in view of the decisions on this procedural point in such cases as *Turner* v. *Milstein*, 103 Cal.App.2d 651,

659 [230 P.2d 25]. But see *Oeth* v. *Mason,* 247 Cal.App.2d 805, 811 [56 Cal.Rptr. 69], footnote 2 (decided Jan. 18, 1967).

As to defendant Holton the order is reversed as to the first and second causes of action; it is affirmed as to the third cause of action. As to defendant Smith the order is affirmed as to the first and second causes of action; it is reversed as to the third cause of action.

Each party shall bear his own costs on appeal.

Jefferson, Acting P. J., and Kingsley, J., concurred.