[No. D030864. Fourth Dist., Div. One. Mar. 14, 2000.]

LEON E. CAMPBELL, as Trustee, etc., et al., Plaintiffs and Appellants, v. SCRIPPS BANK, Defendant and Respondent.

COUNSEL

Leon E. Campbell, in pro. per., and for Plaintiffs and Appellants.

Circuit, McKellogg, Kinney & Ross, R. Keith McKellogg and Daniel Pearl for Defendant and Respondent.

OPINION

**WORK, Acting P. J.**—Leon E. Campbell, Richard K. Livett and Robert J. Hill (collectively Campbell) appeal a judgment for Scripps Bank entered after the trial court granted its motion for summary judgment on the basis Campbell is collaterally estopped from prosecuting the action. Campbell contends the action is not barred by collateral estoppel; Scripps Bank should be equitably estopped from asserting collateral estoppel; there exist triable issues of material fact; and the attorney fees award under Civil Code section 1717 was erroneous. As we shall explain, because we conclude Scripps Bank is not entitled to attorney fees under the general escrow instructions, we reverse the attorney fees award. Determining that Campbell's remaining contentions are without merit, we affirm the judgment in all other respects.

FACTUAL AND PROCEDURAL BACKGROUND

In 1989, Campbell agreed to sell certain unimproved real property in La Jolla to G. Milam Hall for $650,000. The parties contemplated Hall borrowing $450,000 from John M. Sachs to enable him to purchase the property and that Campbell would loan Hall the remainder of the purchase price. In order to induce other lenders to loan Hall funds to develop the property, Campbell and Hall entered into a subordination agreement by which Campbell agreed to subordinate its position as Hall's secured creditor in favor of other lenders, conditioned upon such acquisition and development loans complying with certain terms regarding maturity and points charged. Sachs's agreement to make the acquisition loan was conditioned on his note being secured by a first deed of trust. Scripps Bank handled the escrow for the real property transaction, which closed May 15, 1989. Scripps Bank informed the title company that Campbell's deed of trust was a second trust deed and was to be recorded subject to the Sachs deed of trust. When the sale closed, the Sachs deed of trust, the Campbell deed of trust and the subordination agreement were recorded concurrently, with Campbell's trust deed reciting it was "second and subsequent in lien to [the Sachs] deed of trust recorded concurrently herewith." When Hall's development plans failed, secured creditors foreclosed their security interests in the property, rendering Campbell a sold-out junior lienholder whose security interest in the property was destroyed when the sale produced insufficient proceeds to repay Campbell.

Campbell then sued Sachs for declaratory and injunctive relief to stop the foreclosure and to determine the priority between the two concurrently recorded purchase money deeds of trust. (*Campbell v. Sachs* (Super. Ct. San Diego County, 1991, No. 643725).) The trial court ruled the parties intended the Sachs trust deed to have priority over the Campbell trust deed and entered judgment accordingly. Campbell appealed. (*Campbell v. Sachs* (July 14, 1995, D018994) [nonpub. opn.].) On July 14, 1995, we affirmed the judgment, holding that substantial evidence supports the trial court's factual determination Sachs's trust deed was intended to be and was senior to Campbell's trust deed.

On May 14, 1993, Campbell sued Scripps Bank for negligence and declaratory relief, alleging it had negligently caused the escrow to close with the loan terms not complying with the terms of the subordination agreement. Campbell's first amended complaint for breach of contract and declaratory relief was dismissed without prejudice on May 5, 1994, abating the matter while the appeal in *Campbell v. Sachs, supra,* D018994, was pending. After our ruling in that case, the parties stipulated to set aside the dismissal and reopen the matter in October 1997. Scripps Bank then moved for summary judgment. In granting the motion, the trial court reasoned:

"[Scripps Bank]'s Motion for Summary Judgment is granted as [Campbell] is collaterally estopped from prosecution of this action. The Court of Appeal's decision in Court of Appeal Case No. D018994 affirming the trial court's finding that the intent of the parties was that the Sachs' deed of trust was to be senior to that held by [Campbell] irrespective of the Sachs' deed of trust compliance with the subordination agreement as finally determined adversely to [Campbell] [and] that action is entitled to collateral estoppel effect and this action, as asserted by [Scripps Bank]. [Citations.]

"As this action is premised upon liability as a result of [Scripps Bank]'s alleged failure to insure the Sachs' loan and deed of trust complied with the terms of the subordination agreement and/or recordation of the allegedly noncompliant Sachs' loan and deed of trust is superior to that deed of trust held by [Campbell]. Necessarily the application of collateral estoppel effect to the findings of inapplicability of the subordination agreement and of a filed intent of seniority to [be] afforded to the Sachs' loan precludes this action."

The trial court later awarded attorneys fees to Scripps Bank. Campbell timely appealed.[1]

---

[1]Although Campbell has appealed the defense summary judgment and incorporated post-judgment award of attorney fees, Campbell has not appealed the trial court's ruling sustaining Scripps Bank's demurrer to the negligence cause of action asserted in the original complaint and dismissing it.

## SUMMARY JUDGMENT WAS PROPERLY GRANTED ON THE BASIS OF COLLATERAL ESTOPPEL[2]

■ Campbell contends the trial court erred in ruling the doctrine of collateral estoppel bars them from litigating whether Scripps Bank breached its contractual duty to them by causing the escrow to close without compliance with the terms of the subordination agreement. Campbell specifically asserts the doctrine is inapplicable because Scripps Bank was not a party to the Sachs litigation and, in any event, the issues in this litigation were not actually litigated in the prior action. As we shall explain, Campbell's assertions are incorrect.

---

[2]The parties agree the applicable standard of review here is de novo review. (*Reliance Nat. Indemnity Co. v. General Star Indemnity Co.* (1999) 72 Cal.App.4th 1063, 1074 [85 Cal.Rptr.2d 627]; *Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners* (1997) 52 Cal.App.4th 867, 873 [60 Cal.Rptr.2d 830].)

To prevail on a motion for summary judgment, a defendant must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense to that cause of action. (*Bacon v. Southern Cal. Edison Co.* (1997) 53 Cal.App.4th 854, 858 [62 Cal.Rptr.2d 16]; Code Civ. Proc., § 437c, subd. (*o*)(2).) "On review of a summary judgment in favor of the defendant, we review the record de novo to determine whether the defendant has conclusively negated a necessary element of the plaintiff's case or demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial." (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673-674 [25 Cal.Rptr.2d 137, 863 P.2d 207].) The evidence of the moving party is strictly construed and that of the opponent is liberally construed, and any doubts as to the propriety of granting the motion are to be resolved in favor of the party opposing the motion. (*Branco v. Kearny Moto Park, Inc.* (1995) 37 Cal.App.4th 184, 189 [43 Cal.Rptr.2d 392].)

Summary judgment should be granted only when a moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) Mindful that summary judgment raises only questions of law, we independently review the parties's supporting and opposing papers and apply the same standard as the trial court in determining whether there exists a triable issue of material fact. (*City of San Diego v. U.S. Gypsum Co.* (1994) 30 Cal.App.4th 575, 583 [35 Cal.Rptr.2d 876]; *Southern Cal. Rapid Transit Dist. v. Superior Court* (1994) 30 Cal.App.4th 713, 723 [36 Cal.Rptr.2d 665]; *Planned Parenthood v. City of Santa Maria* (1993) 16 Cal.App.4th 685, 690 [20 Cal.Rptr.2d 391].) The summary judgment process undertakes to expedite litigation and eliminate needless trials. (*King v. Andersen* (1966) 242 Cal.App.2d 606, 610 [51 Cal.Rptr. 561]; *PMC, Inc. v. Saban Entertainment, Inc.* (1996) 45 Cal.App.4th 579, 590 [52 Cal.Rptr.2d 877].) However, the process should be used with caution because it is a drastic measure depriving the losing party of a trial on the merits. (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].)

The first step in reviewing a summary judgment in favor of defendant is to " 'identify the issues framed by the pleadings since it is these allegations to which the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief on any theory reasonably contemplated by the [complaint].' " (*Carleton v. Tortosa* (1993) 14 Cal.App.4th 745, 752 [17 Cal.Rptr.2d 734], quoting *AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203].) Here, our principal task of determining whether Campbell is collaterally estopped from litigating the matter constitutes a question of law that, we reiterate, we resolve de novo.

■ "The doctrine of collateral estoppel precludes relitigation of an issue previously adjudicated if: (1) the issue necessarily decided in the previous suit is identical to the issue sought to be relitigated; (2) there was a final judgment on the merits of the previous suit; and (3) the party against whom the plea is asserted was a party, or in privity with a party, to the previous suit." (*Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903, 910 [226 Cal.Rptr. 558, 718 P.2d 920].) Contrary to Campbell's assertion, a stranger to the prior judgment may assert defensive issue preclusion. (*Bernhard v. Bank of America* (1942) 19 Cal.2d 807, 813 [122 P.2d 892]; see *Fairchild v. Bank of America* (1958) 165 Cal.App.2d 477, 482 [332 P.2d 101].)

■ Similarly, the issues in this matter were actually litigated in the prior action. In the Sachs case, the trial court found the parties intended the Sachs deed of trust to have priority over the Campbell deed of trust. On appeal, a panel of this court held that substantial evidence supported the trial court's finding the parties intended the Sachs deed of trust to have priority over the Campbell deed of trust *regardless whether the Sachs loan complied with the terms of the subordination agreement.* Our decision conclusively resolved that issue. (*Campbell v. Sachs, supra,* D018994.) Consequently, Campbell's cause of action for breach of contract here seeking relief for Scripps Bank's closing of escrow without obtaining compliance with the terms of the subordination agreement lacks the potential of damages to Campbell. Because the subordination agreement had no legal effect on the relative priority of the two trust deeds (as it was not intended to apply to the Sachs loan), Campbell could not have been damaged by Scripps Bank's alleged failure "to obtain compliance with the terms of the subordination agreement." Accordingly, the final judgment in the Sachs case resolving that Campbell intended the Sachs trust deed to be senior to theirs regardless whether it complied completely with the subordination agreement terms conclusively resolves the issue of whether Scripps Bank is liable to Campbell for any alleged breach of contract regarding the relative priority of the two trust deeds.

■ Campbell asserts Scripps Bank should be equitably estopped[3] from relying on the doctrine because its conduct intentionally and deliberately misled Campbell to believe the Sachs loan complied with the

---

[3]"Equitable estoppel, originally known as estoppel in pais, and also called estoppel by conduct, is simply stated. 'Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it.' (Evid. Code, § 623 . . . .) The doctrine is defensive in nature only, and 'operates to prevent one [party] from taking an unfair advantage of another.' [Citation.] Whether there is an estoppel is chiefly a question of fact. [Citation.] There must be (1) a representation or concealment of material facts (2) made with knowledge, actual or virtual, of the facts, (3) to

subordination agreement upon the close of escrow. Additionally, Campbell asserts the doctrine of collateral estoppel cannot be applied in favor of a party if that party's own negligence led to the adjudication upon which such party seeks to utilize as a defense. (*Ruffalo v. Patterson* (1991) 234 Cal.App.3d 341, 344 [285 Cal.Rptr. 647].)

As to traditional equitable estoppel, the complaint is devoid of any allegations of any intentional or deliberate misrepresentation by Scripps Bank upon which an equitable estoppel could be founded. ■ Granted, actual fraudulent intent is not necessary to raise estoppel, as negligence that is careless and culpable as a matter of law is equivalent to an intent to deceive (*Crestline Mobile Homes Mfg. Co. v. Pacific Finance Corp.* (1960) 54 Cal.2d 773, 778 [8 Cal.Rptr. 448, 356 P.2d 192]) and silence where there is a duty to speak will suffice (*Skulnick v. Roberts Express, Inc.* (1992) 2 Cal.App.4th 884, 891 [3 Cal.Rptr.2d 597]). Moreover, as noted above, a party cannot assert collateral estoppel if that party's negligence led to the adjudication sought to be used defensively. ■ However, even assuming without deciding that Scripps Bank had a contractual duty to review and require compliance of the trust deeds with the subordination agreement, its alleged negligent recordation of the documents did not result in the Sachs judgment. Rather, the record is painfully clear from the Sachs case that although the Sachs loan predated the subordination agreement,[4] Campbell specifically agreed to designate it as the senior lien without attempting to verify its conformity with the subordination agreement. Further, Campbell never attempted to alert Sachs to the terms of the subordination agreement. The inference is inevitable the parties did not intend the subordination agreement to apply to him. Consequently, because the Sachs case finally resolved that the parties did not so intend, any alleged negligence on the part of Scripps Bank did not result in the adjudication upon which it relies for purposes of collateral estoppel.

### ATTORNEY FEES WERE IMPROPERLY AWARDED

■ Campbell contends the trial court erroneously awarded attorney fees under a standardized indemnification clause within the general escrow instructions. More specifically, Campbell asserts the governing clause makes no reference to any action to enforce the escrow contract within the context of entitlement to attorney fees; rather, it simply provides for indemnification, including attorney fees or costs, under specific circumstances where the

---

a party ignorant, actually and permissibly, of the truth, (4) with the intent, actual or virtual, that the latter act upon it, and (5) the party must have been induced to act upon it." (*San Diego Mun. Credit Union v. Smith* (1986) 176 Cal.App.3d 919, 922-923 [222 Cal.Rptr. 467].)

[4] In fact, the subordination agreement expressly refers to the prior Sachs deed of trust and specifically its date of execution.

escrow holder incurs extraordinary fees and costs as the result of disputes between the principals, or them and third parties. Finally, Campbell urges the indemnification clause at minimum is ambiguous regarding whether it falls within the scope of Civil Code section 1717 and should be construed against Scripps Bank under Civil Code section 1654. We agree.

Paragraph 12 of the general instructions provides: "All notices, demands and instructions must be in writing. If conflicting demands are made or notice served on you or any dispute or controversy arises between the Principals or with any third person relating to this escrow, you shall have the absolute right, at your election, to withhold and stop all further proceedings in this escrow without liability and without determining the merits of the demands, notices, or litigation; or sue in interpleader; or both. The Principals, jointly and severally, hereby promise and agree to pay promptly on demand, as well as to indemnify you and hold you harmless against and in respect of any and all litigation and interpleader costs, claims, losses, damages, recoveries, judgments, and expenses, including, without limitation, reasonable attorneys fees that you may incur or suffer, which arise, result from or relate to this escrow."

The trial court awarded Scripps Bank $8,159 in attorney fees and costs under Civil Code section 1717 and paragraph 12 above. Acknowledging that Campbell was correct in asserting an indemnification clause will not give rise to a Civil Code section 1717 contractual claim for an award of attorney fees (see *Myers Building Industries, Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 968-975 [17 Cal.Rptr.2d 242]; *Meininger v. Larwin-Northern California, Inc.* (1976) 63 Cal.App.3d 82, 84-85 [135 Cal.Rptr. 1]), the trial court ruled the language of paragraph 12 cannot be read as limited to indemnification. Rather, the trial court determined its broad character required it to be applied not only to indemnification, but also to attorney fees incurred in any litigation resulting from or relating to the escrow. Consequently, the trial court held that any fees incurred in defending this action, which admittedly arose from the escrow, are within the purview of paragraph 12 and thus properly recoverable by Scripps Bank.

██ Preliminarily, given that the trial court interpreted paragraph 12 without resorting to extrinsic evidence, we apply de novo review, exercising our independent judgment in interpreting the clause without giving any deference to the trial court's ruling. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]; *Meininger v. Larwin-Northern California, Inc., supra,* 63 Cal.App.3d at p. 85.) ██ Under Civil Code section 1717, a reciprocal right to attorney fees in all parties to a contract arises where the contract accords a right to such fees to one

party but not the other. (*Myers Building Industries, Ltd. v. Interface Technology, Inc., supra,* 13 Cal.App.4th at p. 968.) However, the inclusion of attorney fees as an item of loss in a third party claim indemnity provision does not constitute a provision for the award of attorney fees in an action on contract as is required to trigger operation of Civil Code section 1717. (*Myers, supra,* at pp. 971-973; *Meininger, supra,* at p. 85.) Regardless whether this clause is characterized as an indemnification or an attorney fees provision, the usual rules of construing a contract govern our interpretation, as we strive to determine the actual intent of the parties. (*Royster Construction Co. v. Urban West Communities* (1995) 40 Cal.App.4th 1158, 1170 [47 Cal.Rptr.2d 684]; *Myers, supra,* at p. 969; see *Claussen v. First American Title Guaranty Co.* (1986) 186 Cal.App.3d 429, 437 [230 Cal.Rptr. 749].) We conclude paragraph 12, read as a whole and in context, is simply an indemnification clause that does not put the principals to the escrow on notice that it is an attorney fees clause providing for an award of fees to a prevailing party in litigation to enforce the escrow instructions.

The second sentence of paragraph 12 authorizes the escrow holder to withhold and stop all further escrow proceedings without liability or sue in interpleader, or both, *where conflicting demands are made on the escrow holder or any dispute or controversy arises between the principals or with any third person relating to the escrow.* The third sentence provides that the principals to the escrow shall pay all litigation and interpleader costs, including reasonable attorney fees, incurred by the escrow holder "which arise, result from or relate to [the] escrow." Within context, these sentences construed together provide for attorney fees in the event of litigation arising out of conflicting demands made on the escrow holder or any dispute or controversy that arises between the principals or with any third person regarding the terms of the escrow. (See *Francis v. Eisenmayer* (1959) 171 Cal.App.2d 221, 226 [340 P.2d 54].) They do not provide for the recovery of attorney fees in actions between a principal and the escrow holder to enforce the general escrow instructions. (See *Myers Building Industries, Ltd. v. Interface Technology, Inc., supra,* 13 Cal.App.4th at p. 973.) "What the parties no doubt had in mind and which appears to be reasonable, was that although the fee the escrow holder exacts for the ordinary service of transferring the documents and money between the parties to an escrow is adequate for that purpose, it is certainly not sufficient to cover any extraordinary services arising out of the situations it may face in its status as escrow holder, such as those mentioned in the instructions at bar, including conflicting demands concerning ownership of funds or documents in escrow or the relations and dealings between the parties therein, or a suit in interpleader, and that under such circumstances they should provide the escrow holder with reimbursement over and above the usual escrow fee." (*Francis v.*

*Eisenmayer, supra,* 171 Cal.App.2d at p. 227.)[5] As such, it is a standard indemnity provision where attorney fees are included as losses or expenses recoverable under that indemnity agreement. (*Myers, supra,* at p. 973.)[6] Moreover, in interpreting the language of paragraph 12, we properly bear in mind Scripps Bank presented to Campbell for signature the printed form of escrow instructions and thus any uncertainty regarding them must be construed against Scripps Bank who prepared them. (*Myers Building Industries, Ltd. v. Interface Technology, Inc., supra,* 13 Cal.App.4th at p. 973; Greenwald & Asimow, Cal. Practice Guide: Real Property Transactions (The Rutter Group 1999) ¶ 4:584, p. 4-142.) Consequently, read in context, the language in the third sentence is neither so broad to encompass the principals' obligation to pay the escrow holder attorney fees in litigation against the latter to enforce the general escrow instructions, nor clear and unambiguous to put the principals on notice of such an obligation. Attorney fees were thus improperly awarded under paragraph 12.

## DISPOSITION

That part of the judgment awarding Scripps Bank $8,159 in attorney fees and costs is reversed. In all other respects, the judgment is affirmed. The parties are to bear their own costs.

Nares, J., and O'Rourke, J., concurred.

A petition for a rehearing was denied April 10, 2000, and appellants' petition for review by the Supreme Court was denied May 24, 2000.

---

[5]Our interpretation is consistent with what escrow holders typically seek in executed general instructions. That is, "an agreement that any party bringing an action to which the escrow holder is joined must reimburse the escrow holder for expenses, costs, and attorney fees incurred." (2 Cal. Real Property Transactions (Cont.Ed.Bar 3d ed. 1998) § 13.32, p. 13-22.) The attorney fees provision of such an indemnification clause does not fall within the ambit of Civil Code section 1717. (*Ibid.*)

[6]Relying on language substantially similar to the third sentence of paragraph 12 here without analysis and out of context, the court in *Bruckman v. Parliament Escrow Corp.* (1987) 190 Cal.App.3d 1051, 1059 [235 Cal.Rptr. 813], treated the language as an attorney fees clause made reciprocal to the prevailing party under Civil Code section 1717 in an action on the escrow agreement. Other than its apparent presumption the language constitutes an attorney fees provision made reciprocal under Civil Code section 1717, *Bruckman* offers us no analytical guidance.