Filed 4/1/15; pub. order 4/14/15 (see attached) (reposted 4/15/15 to correct description line date; no change to opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| EARL B. RIDEAU et al., | D065751 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2010-00096274-CU-BC-CTL) |
| STEWART TITLE OF CALIFORNIA, INC., | |
| Defendant and Respondent. | |

APPEAL from an order and judgment of the Superior Court of San Diego County, Jay M. Bloom, Judge. Affirmed.

Dennis R. Delahanty for Plaintiffs and Appellants.

Best Best & Krieger, Robert J. Hanna, Kira L. Klatchko and Shannon M. Erickson for Defendant and Respondent.

Plaintiffs and appellants Earl B. Rideau and Marina Rideau (the Rideaus) entered into an agreement with condominium developer, Inmobiliaria BGJB de Mexico, S. de R.L. de C.V. (BGJB; not a party to this appeal), to purchase a unit to be constructed in Mexico. The Rideaus deposited funds toward the purchase price with an escrow company, defendant and respondent Stewart Title of California (Stewart Title). In the

"Sale Escrow Instructions" (the Instructions), Stewart Title agreed to receive funds from the Rideaus, to be released at the seller's direction to a fund control company, as specified in the Instructions. The project failed and the Rideaus lost their deposit.

In the Rideaus' prior appeal, we reversed a defense judgment on the basis that the trial court erred in denying their contract claim that Stewart Title had breached the Instructions, when it released their $239,700 deposited funds to entities other than the one specified in the Instructions (California Fund Control; not a party to this appeal; the "fund control company"). (*Rideau v. Stewart Title* (Sept. 12, 2013, D061497) [nonpub. opn.]; the "prior opinion.") On remand, the trial court entered judgment in their favor.

This appeal arises from the trial court's denial of the Rideaus' motion for an award of contractual attorney fees and costs, based upon "hold harmless" language found in section IV of the Instructions, "Release of Funds," regarding defense of claims arising from the Instructions. The Rideaus contend a portion of that language should be interpreted as a reciprocal attorney fees clause, and not as an item of recovery specified in an indemnity agreement. (Civ. Code, §§ 1717, 2778; all further statutory references are to the Civil Code unless noted; *Baldwin Builders v. Coast Plastering Corp.* (2005) 125 Cal.App.4th 1339 (*Baldwin Builders*).) We conclude that the trial court correctly denied the motion and affirm the order and judgment.

I

*BACKGROUND*

In the prior appeal, we were required to interpret section IV of the Instructions and found that the Rideaus' claim Stewart Title had breached its contractual obligations was

2

valid. Section IV of the Instructions, "Release of Funds," first provided Stewart Title would release funds as instructed by BGJB, without further authorization, and Stewart Title would then disburse the funds to the fund control company. The Instructions represented that BGJB and the fund control company had a pre-approved voucher control system agreement in place. However, Stewart Title released the Rideaus' deposit to other entities. BGJB failed to construct the condominium building, and neither Stewart Title nor BGJB returned the Rideaus' deposit.

In their lawsuit, the Rideaus alleged Stewart Title breached the contract, committed negligence, and violated other duties. After the trial court ruled for Stewart Title, our prior opinion reversed the judgment with directions. We concluded that the most reasonable interpretation of the Instructions was "that they implicitly required Stewart Title to release the Rideaus' funds only to [the fund control company]. In light of this interpretation, we conclude that Stewart Title breached the escrow instructions . . . and that the Rideaus were entitled to judgment in their favor on their breach of contract claim." We reversed the judgment with directions to the trial court to enter a new judgment in favor of the Rideaus for breach of contract, and in favor of Stewart Title on the Rideaus' remaining causes of action (e.g., negligence). The Rideaus were awarded their costs on appeal. In this appeal, they incorporate by reference the appellants' appendix from the prior appeal.

II

*MOTION FOR ATTORNEY FEES; RULING; APPEAL*

On remand, the Rideaus brought their motion for an award of contractual attorney fees and costs, based upon the final sentence in section IV of the Instructions. The Rideaus also sought an award of extra costs to which they would not ordinarily have been entitled, except for the operation of section 1717.

The disputed text in section IV of the Instructions reads in full, with emphasis shown as in the original:

> "**RELEASE OF FUNDS**: From BUYERS['] deposit in escrow, ESCROW HOLDER is authorized and instructed to release funds as instructed by SELLER, upon receipt of this signed instruction from all principals and clearance of BUYERS['] funds, without further authorization from BUYERS; said funds to be disbursed by California Fund Control to pay direct costs, commissions and construction costs only. California Fund Control and SELLER have in place, an agreement where California Fund Control inspects the project site and authorizes payment of construction costs to contractor, sub-contractors and suppliers according to a pre-approved voucher control system. The undersigned BUYERS and SELLER hereby acknowledge that they are aware that Stewart Title, its officers and employees make no warranty or representation of any kind or nature, either express or implied, as to the ownership or condition of title to the property described in this escrow, nor as to the conditions of this escrow will have been complied with nor will any document be filed for recording in connection therewith. **We, the undersigned, hereby hold Stewart Title harmless from any loss or damage which may be sustained by reason of the above disbursement instruction, and for the failure of any of the conditions of this escrow, and for the recovery of said money so released, and agree to defend you against any claims whatsoever arising from [*sic*] and [*sic*] any attorneys fee, expenses or costs incident thereto**."

4

The Rideaus argued that the last sentence in section IV, referring to defense of claims and recovery of attorney fees and expenses, amounted to a unilateral attorney fee provision, which should be given reciprocal effect under section 1717.

In response, Stewart Title contended that the "hold harmless" language indicated this was a unilateral indemnity clause, which required only that the buyers and seller would defend Stewart Title in claims arising from its compliance with the Instructions, and therefore the clause was not subject to section 1717 reciprocity. The Instructions did not otherwise provide for attorney fees in an action to enforce the Instructions. Stewart Title requested judicial notice of the trial court's previous statement of decision and the appellate opinion from the prior appeal, which was granted by the trial court.

The trial court took the matter under submission and issued its ruling, interpreting section IV of the Instructions as requiring denial of the request for attorney fees. The court ruled that section 1717 and its reciprocal principle do not apply to the attorney fees language, which it read as being incorporated into the indemnity provision of the Instructions. Therefore, the court relied on case law providing that reciprocity generally does not apply to attorney fees provisions in indemnity clauses. (See summary in *Baldwin Builders, supra*, 125 Cal.App.4th 1339, 1344.) The ruling quotes the following excerpt from *Baldwin Builders* as explaining why the section 1717 rule of reciprocity is inapplicable, in those cases in which the recovery of attorney fees is authorized as an item of loss or expense in an indemnity agreement:

> "Because an indemnity agreement is intended by the parties to
> unilaterally benefit the indemnitee, holding it harmless against
> liabilities and expenses incurred in defending against third party tort

5

claims [citation], application of reciprocity principles would defeat the very purpose of the agreement. [Citation.] In requiring reciprocity of only those provisions that authorize the recovery of attorney fees 'in an[y] action on [the] contract,' section 1717[, subdivision] (a) expressly excludes indemnity provisions that allow the recovery of attorney fees as an element of loss within the scope of the indemnity." (*Baldwin Builders, supra,* 125 Cal.App.4th at p. 1344.)

The trial court went on to find that section IV of the Instructions was an indemnity provision that did not specifically provide for the recovery of attorney fees incurred to enforce the contract or the Instructions, in litigation between plaintiffs/buyers and Stewart Title/escrow holder. The court interpreted the language to be an indemnity agreement by the principals (buyer and seller), in which they agreed to defend Stewart Title (escrow holder) against claims arising from Stewart Title's compliance with the disbursement instruction, including the payment of attorney fees incident to its defense.

The trial court ruled that since the Rideaus, as buyers, were claiming and had established that Stewart Title did not comply with the disbursement instruction, the indemnity provision was inapplicable. The indemnity provision was unilateral and for the protection of Stewart Title, assuming it had complied with the Instructions. As such, the applicable authorities did not justify a finding that the Rideaus had brought an action to enforce the indemnity agreement found within the Instructions. (*Baldwin Builders, supra*, 125 Cal.App.4th at pp. 1342-1346; see *Continental Heller Corp. v. Amtech Mechanical Services, Inc.* (1997) 53 Cal.App.4th 500, 509 (*Continental Heller*).) Instead, these indemnity provisions specified attorney fees were an element of loss within the scope of the indemnity recovery. Regarding their breach of contract theory, the

6

Rideaus could not show entitlement to recover their reciprocal attorney fees under section 1717.  They appeal.

III

*APPLICABLE STANDARDS FOR CONTRACT INTERPRETATION*

A.  Review

Escrow instructions may be analyzed under contract principles, and we view the escrow holder as an agent and fiduciary of the parties to the escrow.  (*Summit Financial Holdings, Ltd. v. Continental Lawyers Title Company* (2002) 27 Cal.4th 705, 711; *Amen v. Merced County Title Co.* (1962) 58 Cal.2d 528, 534.)  An agency created by an escrow is limited, requiring the escrow holder to carry out the instructions of each of the principal parties.  (*Summit Financial*, *supra*, at p. 711.)  "If the escrow holder fails to carry out an instruction it has contracted to perform, the injured party has a cause of action for breach of contract."  (*Ibid.,* citing *Amen, supra*, at p. 532.)

Here, as in the prior appeal, the trial court reached its legal conclusions by analyzing the plain language of the Instructions, including their hold harmless language. Read in context, this agreement by the principals to "hold Stewart Title harmless from any loss or damage" defines this portion of the Instructions as an indemnity agreement. Generally, indemnity is defined as an obligation of one party to pay or satisfy the loss or damage incurred by another party.  (*Zalkind v. Ceradyne, Inc.* (2011) 194 Cal.App.4th 1010, 1025 (*Zalkind*); §§ 2772, 2778.)  A contractual indemnity provision may be drafted either to cover claims between the contracting parties themselves, or to cover claims

7

asserted by third parties. (*Zalkind, supra,* at p. 1025; 12 Miller & Starr, Cal. Real Estate (3d. ed. 2011) § 34:76, pp. 34-272 to 34-273; *ibid.* (2014-2015 supp.) § 34.76, p. 18.)

"Indemnity agreements are construed under the same rules which govern the interpretation of other contracts. [Citation.] Accordingly, the contract must be interpreted so as to give effect to the mutual intention of the parties. [Citation.] The intention of the parties is to be ascertained from the 'clear and explicit' language of the contract. [Citation.] And, unless given some special meaning by the parties, the words of a contract are to be understood in their 'ordinary and popular sense.' [Citation.] [¶] 'In interpreting an express indemnity agreement, the courts look first to the words of the contract to determine the intended scope of the indemnity agreement.' " (*Continental Heller, supra*, 53 Cal.App.4th 500, 504.) Section 1641 requires consideration of the whole of a contract, each portion taken together so as to give effect to every part, each clause helping to interpret the other.

On a given set of facts, as here, where the trial court was not required to consider extrinsic evidence in interpretation of a contract, the reviewing court applies de novo review. (*Campbell v. Scripps Bank* (2000) 78 Cal.App.4th 1328, 1336 (*Campbell*).) We exercise our independent judgment in interpreting the clause, giving no deference to the trial court's ruling. (*Ibid.*; *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866.) "To state the obvious: Whether [a party to the agreement] is entitled to recover attorney fees incurred in enforcing the indemnity agreement, as opposed to recovering attorney fees incurred in defending the underlying claims, depends on the language of the contract." (*Continental Heller, supra*, 53 Cal.App.4th 500, 508.)

8

Thus, the provisions of section 1717, subdivision (a) must be applied to the language of the contract, to identify whether the subject lawsuit was "on the contract," and if the contract contains an attorney fees clause, and if the requested fees and costs were incurred by the prevailing party *in enforcement of the contract*. (*Meininger v. Larwin-Northern California, Inc.* (1976) 63 Cal.App.3d 82, 84 (*Meininger*).)

B. Prior Opinion: Inapplicability of Exculpatory Provisions in the Instructions

Before determining the scope and effect of the attorney fee provisions in section IV of the Instructions, we first explain our approach to the exculpatory language in that section, which immediately precedes the hold harmless/attorney fees clause. In our prior opinion, we discussed the ineffectiveness of this exculpatory language, which states that Stewart Title made "no warranty or representation of any kind or nature, either express or implied, as to the ownership or condition of title to the property described in this escrow, nor as to the conditions of this escrow will have been complied with nor will any document be filed for recording in connection therewith." (Section IV of the Instructions then continues with the indemnity "hold harmless" language that we now consider.)

In the prior appeal, Stewart Title claimed it should be excused from liability, under the operation of the exculpatory language. It had argued it did no wrong, and admitted, "The hold-harmless clause did not absolve Stewart Title from wrongdoing or negligence. Instead, the clause protected Stewart Title for *complying with the [Escrow] Instructions . . . .*" (Italics added.) In a footnote in the prior opinion, this court took note that the trial court's statement of decision declined to enforce the exculpatory provisions in the Instructions in such a way as to insulate Stewart Title from liability. The trial court

9

had noted:  "[Stewart Title] also alleges that it is not liable because of the hold harmless clause in the escrow instructions.  Although the [trial] court does not have to reach this issue here, it does not appear the hold harmless clause would insulate [Stewart Title] from liability.  [Citations.]"  The trial court was specifically relying on public policy grounds, which establish that "[w]here the public interest is affected the exculpatory clause will be held invalid."  (*Diaz v. United California Bank* (1977) 71 Cal.App.3d 161, 171; *Akin v. Business Title Corp.* (1968) 264 Cal.App.2d 153, 157-159.)

For purposes of analyzing the current attorney fees entitlement questions, we emphasize that our prior opinion declined, as did the trial court, to reach the issue of whether the exculpatory clause in Section IV of the Instructions could validly be enforced to protect Stewart Title for liability for breaching the Instructions.  Since Stewart Title did not even contend that the exculpatory provisions should be interpreted in such a fashion, we did not utilize any such analysis.  Instead, a breach of contract analysis was dispositive and required a ruling in favor of the Rideaus.

Our current inquiry is limited to reading the terms of section IV of the Instructions in context, to determine the evident intent of the parties, regarding their potential exposure to reciprocal attorney fees obligations.  (§§ 1641, 1644.)  We evaluate the nature of the Rideaus' action and whether it was predominantly brought in enforcement of the contract created by the Instructions, or whether it was predominantly aimed at enforcement of the indemnity clause.

IV

*INDEMNITY PRINCIPLES IN CONTEXT OF ATTORNEY FEES REQUESTS*

A.  Types of Obligations to Indemnify and/or to Pay Attorney Fees

Section 1717 gives rise to a reciprocal right to contractual attorney fees in all parties enforcing a contract, even where the contract accords a right to such fees to one party but not the other.  (*Myers Building Industries v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 968 (*Myers Building Industries*); *Campbell, supra*, 78 Cal.App.4th at pp. 1336-1337.)  The Instructions as a whole do not contain attorney fees clauses, except in the indemnity portion.

Not all indemnity agreements containing attorney fees language can be given reciprocal effect.  In *Myers Building Industries*, the court explained, "The very essence of an indemnity agreement is that one party hold the other harmless from losses resulting from certain specified circumstances.  The provisions of Civil Code section 1717 were never intended to inflict upon the indemnitee the obligation to indemnify his indemnitor in similar circumstances.  Indemnification agreements are intended to be unilateral agreements.  The Legislature has indicated no intent to make them reciprocal by operation of law.  Indeed a contrary intent is evidenced by Civil Code section 2778, subdivision 3, including attorney fees as a matter of law as an item of recoverable loss in an indemnity agreement." (*Myers Building Industries, supra,* 13 Cal.App.4th 949, 973.)

In the context of escrow agreements, an indemnification clause usually provides for recovery of funds, including attorney fees or costs, under circumstances in which the escrow holder has incurred extraordinary fees and costs as the result of disputes between

11

the principals, or the principals and third parties. (*Campbell, supra*, 78 Cal.App.4th 1328, 1335-1336.) The Rideaus would read the indemnity provisions in the Instructions as providing coverage for first party claims made between the parties to the Instructions, as well as any third party claims that might be made ("agree to defend you against *any claims whatsoever*"). (*Zalkind*, *supra*, 194 Cal.App.4th at p. 1025.) The Rideaus' hypothetical indemnity claim would be similar to their underlying breach of contract claim, to recover loss sustained by reason of the poor performance of the Instructions, except that an indemnity action would bring in the attorney fees language in the hold harmless clause.

Each contract containing indemnification language or attorney fees provisions must be analyzed on its own terms, and in context, pursuant to the usual rules of contract interpretation for determining the actual intent of the parties. (*Campbell, supra*, 78 Cal.App.4th at pp. 1336-1337; see *Appalachian Ins. Co. v. McDonnell Douglas Corp.* (1989) 214 Cal.App.3d 1, 43-44 [interpreting indemnification provisions of the contract as expressly inapplicable, according to the language of the contract in view of the circumstances at issue in the case]; *Myers Building Industries, supra*, 13 Cal.App.4th 949, 972-973.)

Part of the interpretive inquiry identified in *Campbell* is whether the indemnity language about attorney fees puts the principals to the escrow "on notice that it is an attorney fees clause providing for an award of fees to a prevailing party in litigation to enforce the escrow instructions." (*Campbell, supra*, 78 Cal.App.4th at p. 1337.) The court identified certain policy considerations that support the inclusion of indemnity

provisions in escrow agreements, to allow for recovery of potential expenses that the escrow holder might incur if extraordinary services are required of it (such as resolving conflicting demands concerning ownership of funds or problems between the parties or third parties). Where more than the usual escrow fee might be appropriate compensation, a contractual indemnity term could be used to provide for reimbursement of such extraordinary expenses. (*Ibid.*)

The holdings of the line of cases analyzing when indemnity provisions that contain attorney fees references can properly support a reciprocal award of attorney fees under section 1717 were thoroughly summarized in *Carr Business Enterprises, Inc. v. City of Chowchilla* (2008) 166 Cal.App.4th 14, 20-23 (and we will refrain from repeating that summary). The general rule is that the specification of attorney fees as an item of loss in a third party claim indemnity provision (§ 2778, subd. (3)) "does not constitute a provision for the award of attorney fees in an action on the contract which is required to trigger section 1717." (*Carr, supra*, at p. 20; citing *Myers Building Industries, supra,* 13 Cal.App.4th at pp. 971-973; *Meininger, supra*, 63 Cal.App.3d 82, 84-85.) Where a party proves entitlement to recover under an indemnity clause (as an indemnitee), the other party (the indemnitor) must reimburse the indemnitee "for any damages the indemnitee becomes obligated to pay third persons. [Citation.] Indemnification agreements ordinarily relate to third party claims." (*Carr, supra*, at p. 20; *Myers Building Industries, supra,* at p. 969.) In addition to damages, the indemnitee can recover its costs of defense against the third party claim. (§ 2778, subd. (3).)

13

The Rideaus rely primarily on a few cases that have allowed the reciprocal principles of section 1717 to apply in the context of an indemnity agreement. The trial court's ruling extensively analyzed and distinguished *Baldwin Builders*, in which the subject attorney fees provision was located within the indemnity provision, providing "Subcontractor shall pay all costs, including attorney's fees, incurred in enforcing this indemnity agreement [i.e., in an action to enforce the indemnity]." (*Baldwin Builders, supra,* 125 Cal.App.4th at p. 1342.) The contractor Baldwin Builders had been sued by homeowners, and in turn it sued the subcontractors for contractual indemnity, etc. The subcontractors were thus required to defend themselves against the contractor's cross-action, and they incurred defense costs in successfully showing they were not negligent and should not be held liable to indemnify. (*Ibid*.)

In *Baldwin Builders*, this court acknowledged the authorities stating that the rule of reciprocity under section 1717 is "subject to an exception where the recovery of attorney fees is authorized as an item of loss or expense in an indemnity agreement or provision. [Citations.] . . . In requiring reciprocity of only those provisions that authorize the recovery of attorney fees 'in an action on [the] contract,' section 1717[, subdivision] (a) expressly excludes indemnity provisions that allow the recovery of attorney fees as an element of loss within the scope of the indemnity." (*Baldwin Builders*, *supra*, 125 Cal.App.4th at p. 1344.) However, that exclusion or exception does not apply if the attorney fees clause contained in the indemnity agreement states that it applies to actions to enforce the provisions of the indemnity agreement. In such a case,

14

the reciprocal provisions of section 1717 will apply. (*Baldwin Builders, supra,* at pp. 1344-1345; 12 Miller & Starr, *supra*, § 34:76, pp. 34-272 to 34-273.)

In *Baldwin Builders*, *supra*, 125 Cal.App.4th 1339, this court held that the attorney fee provisions in the stand alone indemnity agreements were properly subject to section 1717, subdivision (a), and no such exception (for indemnity) prevented reciprocity. We said, "the express language of the attorney fee clauses authorizes the recovery of attorney fees where one of the parties to the agreement brings an action to enforce the indemnity; such an action is one 'on [the] contract' within the meaning of section 1717[, subdivision] (a) and thus the attorney fee clauses are subject to the statutory requirement of reciprocity. [Citation.] The fact that the attorney fee clauses are set forth in the indemnity agreements does not alter this conclusion." (*Baldwin Builders*, *supra*, at p. 1346.)

In another indemnity example, *Continental Heller,* the appellate court ruled that an attorney fees clause contained in an indemnity provision, which provided that one party would indemnify the other for attorney fees "incurred on account of any breach of the aforementioned obligations and covenants, and any other provision or covenant of this Subcontract," covered attorney fees incurred in an action for breach of express contractual indemnity. (*Continental Heller, supra,* 53 CalApp.4th at p. 509; italics omitted.) In that case, Continental Heller had settled a third party claim brought against it, incurring costs and attorney fees in its defense and also in suing the indemnitor, Amtech. The indemnity agreement contained an additional express provision for attorney fees incurred as a result of a breach of contract. Thus, the agreement was not deemed to

15

be solely an indemnity provision in which attorney fees were a specific item of loss. The court held the clause at issue authorized an award of attorney fees, because Continental Heller had incurred them in suing to enforce the indemnity agreement. (*Id.* at pp. 508-509; see 12 Miller & Starr, *supra,* § 34:76, pp. 34-272 to 34-273.) We next examine the attorney fees language in this case.

### C. Nature of Rideaus' Action; Enforcement of Instructions

Section IV of the Instructions first provides for the release of funds, as analyzed in our prior opinion. It then sets forth the exculpatory language discussed in part III.B, *ante* (no warranty or representation made as to title, etc.; not deemed dispositive here). We focus on the meaning of the next clause, with respect to discerning the evident intent of the parties: "We, the undersigned, hereby hold Stewart Title harmless from any loss or damage which may be sustained by reason of the above disbursement instruction, and for the failure of any of the conditions of this escrow, and for the recovery of said money so released, *and agree to defend you against any claims whatsoever arising from [sic] and [sic] any attorneys fee, expenses or costs incident thereto*." (Italics added and bolding omitted.)

Here as in *Campbell, supra*, 78 Cal.App.4th 1328, whether we label this clause as an indemnification or an attorney fees provision is not determinative. The usual rules for construing a contract require us to determine the actual intent of the parties, regarding their potential exposure to responsibility for paying contractual attorney fees. (*Id*. at p. 1337.)

16

Utilizing the analysis in *Continental Heller, supra*, 53 Cal.App.4th 500, 509, the Rideaus suggest that this court read in a certain phrase from that case, in considering the clause at issue here. This would add language such as "incurred on account of any breach of the aforesaid obligations and covenants" (*ibid.*), which might clarify their enforcement rights. Thus, section IV might now read, "**We, the undersigned, hereby hold Stewart Title harmless from any loss or damage which may be sustained by reason of** [any breach of the aforesaid obligations and covenants] regarding the above disbursement instruction, and for the failure of any of the conditions of this escrow, and for the recovery of said money so released**, and agree to defend you against any claims whatsoever arising from** [any breach of the aforesaid obligations and covenants] **and** [*sic*] **any attorneys fee, expenses or costs incident thereto.**" (Emphasis in original.) However, it is not our place to add or subtract contractual language.

We think the last sentence of section IV of the Instructions provides for attorney fees awards to Stewart Title only if it, as an escrow holder, has acted properly, and prevails in litigation arising out of claims or conflicting demands made upon it, such as litigation arising out of disputes or controversies about the terms of the escrow, among the principals or with any third person. (*Campbell, supra*, 78 Cal.App.4th 1328, 1337.) It is instructive to consider how an indemnity action could have played out under these circumstances. One possible scenario would have been that Stewart Title fully complied with the Instructions, but due to some type of conflict that arose during the escrow arrangement, Stewart Title nevertheless had to pay a settlement amount or damages to a third party claimant. In that scenario, Stewart Title could then seek indemnification from

17

the principals to recoup such extraordinary costs (e.g., damages and defense costs and fees). However, as we have interpreted the clause in the prior opinion, including the exculpatory language, it has been determined that Stewart Title did not comply with the duties required of it under the Instructions, but instead it breached them, and accordingly it has been held liable for breach of contract damages. As such, Stewart Title could not obtain indemnity from the principals for its own bad acts.

We do not think this indemnity language was meant to provide for the recovery of attorney fees, on a reciprocal basis, in this action directly between the Rideaus as principals, and the escrow holder Stewart Title, to enforce the terms of the general escrow instructions. (See *Myers Building Industries, supra,* 13 Cal.App.4th at p. 973.) It does not seem logical that the principals (the Rideaus) should be able to sue on the Instructions to recover not only direct breach of contract damages from Stewart Title, but also assert they were actually seeking first party contractual indemnity that would in turn support their related claim for attorney fees, on a contract basis. The Rideaus as principals were not acting in enforcement of the indemnity clause in the Instructions, but rather they were claiming rights under the previous disbursement portion of the Instructions, which was independent of an indemnity situation.

The question boils down to which action on which contract invoked the need to incur attorney fees. (§ 1717.) Under the configuration of parties here, there was no need for the Rideaus to defend Stewart Title "against any claims whatsoever arising from [sic] and [sic] any attorneys fee, expenses or costs incident thereto." Conversely, there was no need for Stewart Title to defend the Rideaus or itself "against any claims whatsoever

18

arising from [sic] and [sic] any attorneys fee, expenses or costs incident thereto." The ultimate recovery gained by the Rideaus as principals was not obtained under the indemnity clause. Instead, the indemnity clause remained a one way protection for Stewart Title, due to the nature of an escrow holder's duties if they are properly performed, but such indemnity rights were never invoked here. Neither was the indemnity related attorney fees clause.

"To state the obvious: Whether [a party to the agreement] is entitled to recover attorney fees incurred in enforcing the indemnity agreement, as opposed to recovering attorney fees incurred in defending the underlying claims, depends on the language of the contract." (*Continental Heller, supra*, 53 Cal.App.4th 500, 508.) Our exercise of independent judgment in interpreting the clause gives the same result as the trial court's ruling. (*Campbell, supra*, 78 Cal.App.4th 1328, 1336.) The indemnity provision here did not put the Rideaus as principals and the escrow holder, Stewart Title, on sufficient notice that the escrow holder might become liable to pay attorney fees to the principals, in an action brought to enforce the disbursement terms in the Instructions. Even though the Instructions also included an indemnity agreement, that portion of the agreement cannot be given reciprocal effect, where the actual dispute was between a principal and the escrow holder. This was not a case in which a third party claim was brought to invoke the one way indemnity obligation.

Even accepting that a contractual indemnity provision may be drafted either to cover claims between the contracting parties themselves, or to cover claims asserted by third parties (*Zalkind, supra*, 194 Cal.App.4th at p. 1025), the Instructions do not provide

19

indemnity rights among the contracting parties (the principals and the escrow holder), that would support reciprocal treatment, with respect to attorney fees. Rather, this clause only includes attorney fees as an item of loss in a third party claim indemnity provision. Under these circumstances, there was no action that enforced the indemnity agreement, as would have been required to trigger operation of section 1717. (*Myers Building Industries, supra*, 13 Cal.App.4th at pp. 971-973; *Meininger, supra,* 63 Cal.App.3d at p. 85.) We affirm the order and judgment denying the Rideaus' motion for attorney fees and costs.

DISPOSITION

Affirmed. Costs on appeal are awarded to Stewart Title.

**HUFFMAN, Acting P. J.**

**WE CONCUR:**

**HALLER, J.**

**McINTYRE, J**.

20

Filed 4/14/15

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| EARL B. RIDEAU et al., | D065751 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2010-00096274-CU-BC-CTL) |
| STEWART TITLE OF CALIFORNIA, INC., | |
| Defendant and Respondent. | |

THE COURT:

The opinion filed April 1, 2015, is ordered certified for publication.

HUFFMAN, Acting P. J.

Copies to:  All parties