Filed 4/20/26  Volpe Co. v. Sausal Corp. CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| VOLPE COMPANY, INC.,<br>          Plaintiff and Respondent,<br>v.<br>SAUSAL CORPORATION,<br>          Defendant and Appellant. | A171199<br><br>(Marin County<br>Super. Ct. No. CIV1402511) |

In this second appeal in a public works construction dispute between the prime contractor, Sausal Corporation (Prime Contractor), and a subcontractor, Volpe Company, Inc. (Subcontractor), Prime Contractor appeals the trial court's award of attorney fees to Subcontractor.  We hold that Subcontractor is entitled to fees pursuant to Civil Code section 1717,[1] and affirm.

BACKGROUND

During construction, a dispute arose between Prime Contractor and Subcontractor.[2]  (*Volpe Co., Inc. v. Sausal Corp.* (Sept. 29, 2021, A157577 &

_____

[1] All undesignated statutory references are to the Civil Code.

[2] The facts underlying the dispute are not relevant to this appeal.

1

A159372) [nonpub. opn.] (*Volpe v. Sausal*).) Subcontractor sued for breach of contract and other claims. (*Ibid.*) A jury found that Prime Contractor had breached the parties' contract (Contract) under one of multiple theories asserted by Subcontractor. (*Ibid.*) The judgment included an award of contractual attorney fees. (*Ibid.*)

On appeal, this court reversed the judgment as to breach of contract. (*Volpe v. Sausal, supra*, A157577 & A159372.) Because, "[u]nder the special verdict form, once the jury determined Prime Contractor breached the Contract [under the reversed theory], it did not determine whether Prime Contractor committed any other breach," we "remand[ed] Subcontractor's breach of contract claim rather than direct entry of judgment for Prime Contractor on this claim." (*Ibid.*) We also reversed and remanded the attorney fee award without deciding Prime Contractor's challenge that it was not authorized by section 1717. (*Volpe v. Sausal*, A157577 & A159372.)

On remand, following a bench trial, the trial court found Prime Contractor had breached the Contract under other theories asserted by Subcontractor. Subcontractor moved for attorney fees. Following briefing and argument, the trial court—a different bench officer from the one presiding over the initial proceedings—again found Subcontractor was entitled to fees under the Contract.

## DISCUSSION

Prime Contractor argues the Contract does not contain an attorney fee provision within the meaning of section 1717, and therefore Subcontractor is not entitled to contractual fees.[3] We disagree.

---

[3] Prime Contractor does not dispute that Subcontractor was the prevailing party or challenge the reasonableness of the fees awarded.

2

Section 1717, subdivision (a) provides, "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."

" 'Before section 1717 comes into play, it is necessary to determine whether the parties entered an agreement for the payment of attorney fees and, if so, the scope of the attorney fee agreement.' [Citation.] This determination requires us to apply traditional rules of contract interpretation. [Citation.] [¶] Accordingly, we first consider the mutual intention of the parties at the time the contract providing for attorney fees was formed. (Civ. Code, § 1636.) Our initial inquiry is confined to the writing alone. (*Id*., § 1639; [citation].) ' "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' ([Civ. Code], § 1644), controls judicial interpretation. (*Id*., § 1638.) Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning. [Citations.]" ' [Citations.] At the same time, we also recognize the 'interpretational principle that a contract must be understood with reference to the circumstances under which it was made and the matter to which it relates. (Civ. Code, § 1647).' " (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 752.) "We review the issue whether a party is legally entitled to attorney fees and costs de novo." (*Pulse Technology Consulting Group, Inc. v. Skowron & Bunning LLP* (2025) 108 Cal.App.5th 824, 834 (*Pulse Technology*).)

3

Subcontractor relies on the following Contract provision: "Should Subcontractor fail to rectify any contractual deficiencies, including failure to pay its creditors, within three (3) working days from receipt of [Prime] Contractor's written notice, [Prime] Contractor shall have the right to take whatever steps he deems necessary to correct said deficiencies and charge the cost thereof to Subcontractor, who shall be liable for the full cost of [Prime] Contractor's corrective actions, including reasonable overhead, profit and attorneys' fees."[4]

The relevant language in this term provides that Subcontractor shall pay "attorneys' fees" incurred by Prime Contractor in taking "whatever steps [Prime Contractor] deems necessary to correct" Subcontractor's "contractual deficiencies." The ordinary meaning of "contractual deficiencies" is deficiencies in performing contractual obligations, and the term thus includes material breaches of contract. The ordinary meaning of "whatever steps [Prime Contractor] deems necessary to correct" such breaches includes litigation to enforce the Contract.[5] Thus, on its face, this contractual term provides for "attorney's fees and costs . . . which are incurred to enforce [the Contract]." (§ 1717, subd. (a).)

Prime Contractor argues that, if the parties had intended there to be an overarching attorney fees provision, the Contract would have clearly

---

[4] Subcontractor also relies on two additional Contract provisions. We need not and do not decide whether these provisions could also support the fee award.

[5] Prime Contractor conclusorily argues that correcting contractual deficiencies "cannot be construed as filing a lawsuit." We disagree. That there may be other methods of correcting contractual deficiencies is of no moment, as Prime Contractor provides no authority that a lawsuit must be the *only* method for the provision to constitute one for attorney fees within the meaning of section 1717.

included one, and we therefore should not construe this provision to be such a term. But this is not how courts interpret contracts for purposes of section 1717. To the contrary, "there is no magic formulation for a fees provision." (*International Billing Services, Inc. v. Emigh* (2000) 84 Cal.App.4th 1175, 1183 (*International Billing*).) Indeed, " '[a] contract may impliedly as well as expressly permit recovery of attorney fees in the event of suit to enforce the contract.' " (*Pulse Technology*, *supra*, 108 Cal.App.5th at p. 834.)

Cases finding that nonarchetypal attorney fees provisions nonetheless fall within section 1717 are instructive. In *International Billing,* the parties' employment contract included a confidentiality clause and further provided, " 'You promise to reimburse Company for any legal fees, liability, or loss which Company incurs as a result of any unauthorized disclosure or use of Confidential Information by You.' " (*International Billing*, *supra*, 84 Cal.App.4th at p. 1180.) The Court of Appeal held this provision was for attorney fees within the meaning of section 1717: "This [provision] covers legal fees incurred in suits by [the company] against the employee as well as legal fees incurred in suits by [the company] against third parties to prevent the dissemination of information wrongly disclosed by the [employees]."[6] (*International Billing*, at p. 1183.)

---

[6] Prime Contractor argues *International Billing* is distinguishable as primarily relying on judicial estoppel, because the party opposing fees had included a prayer for contractual fees in its pleading. (See *International Billing*, *supra*, 84 Cal.App.4th at pp. 1186–1192.) While this was one part of *International Billing*'s analysis, it was by no means the sole or even primary ground; to the contrary, it has been characterized in subsequent cases as dicta—including by the *International Billing* court itself. (See *M. Perez Co., Inc. v. Base Camp Condominiums Assn. No. One* (2003) 111 Cal.App.4th 456, 464 ["Having concluded that the provision permitted an award of attorney fees to the prevailing party, the matter before us was resolved. However, in dicta, we took the opportunity to address another chronic problem—the misuse of attorney fee claims."]; *Topanga and Victory Partners v. Toghia*

In *Pulse Technology,* the parties' services contract provided, " 'Client will be responsible for all third party costs incurred by [the company] to collect overdue invoices.' " (*Pulse Technology*, *supra*, 108 Cal.App.5th at p. 835.)  The Court of Appeal held the provision was for attorney fees within the meaning of section 1717: "True, [the contract provision] does not specifically refer to legal proceedings, litigation costs, or attorney fees.  But collection efforts—particularly those outsourced to third parties—will frequently devolve into litigation.  [Citations.]  It requires no exercise of imagination to see that 'third party costs,' in the collection context, will often involve litigation costs, including attorney fees." (*Pulse Technology*, at p. 837.)

In *Andrade v. Western Riverside Council of Governments* (2024) 99 Cal.App.5th 1020, a loan agreement secured by real property contained the following provision: " 'The Property Owner . . . acknowledges that if any Assessment Installment is not paid when due, the Authority . . . has the right to have such delinquent Assessment Installment and its associated penalties and interest stripped off the secured property tax roll and immediately enforced through a judicial foreclosure action that could result in a sale of the Property for the payment of the delinquent installments, associated penalties and interest, and all costs of suit, including attorneys' fees.' " (*Id.* at p. 1024.)  The property owner sued for rescission of the agreement, and subsequently sought prevailing party attorney fees.  (*Id.* at pp. 1023–1024.)  The Court of

_____

(2002) 103 Cal.App.4th 775, 787 ["The appellate court's extended discussion concerning the application of judicial estoppel [citation] was unnecessary dictum"]; *Hart v. Clear Recon Corp.* (2018) 27 Cal.App.5th 322, 330 ["the court went on to state, in dicta, that a party could be judicially estopped to deny that a contract provided for an award of fees if that party had sought an award of fees under that contractual provision"].)

6

Appeal rejected the argument that this provision was limited to judicial foreclosure actions: "Under section 1717, subdivision (a), . . . a fee provision must 'be construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract.' . . . The purpose of the amendment was to clarify to 'either party to any contract that provided for attorney's fees' that they may not 'limit the forms of action to which attorney's fees are applicable,' " and, because "[t]he loan agreements do not specify that [the property owner] was represented by counsel in negotiating the contract . . . , section 1717 operates to extend the mutual right to obtain attorney's fees to the entire contract." (*Id.* at pp. 1026–1027, 1028, fn. omitted.)

These cases clearly establish that a contract term need not be an archetypal attorney fees provision to fall within section 1717. As in these cases, the contractual language here encompasses the provision of attorney fees to enforce the Contract.

To be sure, as Prime Contractor notes, courts have held third party indemnity provisions are not attorney fee provisions within the meaning of section 1717. (See *Rideau v. Stewart Title of California, Inc.* (2015) 235 Cal.App.4th 1286, 1298 ["The general rule is that the specification of attorney fees as an item of loss in a third party claim indemnity provision [citation] 'does not constitute a provision for the award of attorney fees in an action on the contract which is required to trigger section 1717' "].) But, as Prime Contractor concedes, the provision here is *not* such a provision. "Courts look to several indicators to distinguish third party indemnification provisions from provisions for the award of attorney fees incurred in litigation between the parties to the contract. The key indicator is an express reference to

7

indemnification. A clause that contains the words 'indemnify' and 'hold harmless' generally obligates the indemnitor to reimburse the indemnitee for any damages the indemnitee becomes obligated to pay third persons—that is, it relates to third party claims, not attorney fees incurred in a breach of contract action between the parties to the indemnity agreement itself." (*Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 600 (*Alki Partners*).) No such terms appear in the provision at issue; in contrast, other provisions in the Contract do include the terms "indemnify," "save harmless," and "hold free and harmless."

Prime Contractor argues that, although the provision is not a third party indemnity provision, it is "more akin to indemnity clauses than a prevailing party attorney fee clause." Even so assuming, Prime Contractor cites no authority that this is material to our analysis. In any event, indemnity provisions are held outside of section 1717's scope because they limit attorney fees to those incurred against third parties. (*Alki Partners*, *supra*, 4 Cal.App.5th at p. 600 ["Generally, if the surrounding provisions describe third party liability, the clause will be construed as a standard third party indemnification provision"].) While the contractual language here includes attorney fees incurred with respect to third parties, we are not persuaded that the language and context limit it solely to such scenarios. (See *International Billing*, *supra*, 84 Cal.App.4th at p. 1183.)

In sum, we hold that the Contract includes an attorney fee provision within the meaning of section 1717. This holding resolves the appeal. We therefore need not decide whether, as the parties dispute, certain attorney fee statutes provide an alternative basis to affirm the fee award.

DISPOSITION

The judgment is affirmed. Respondent is awarded its costs on appeal.


SIMONS, J.


We concur.

JACKSON, P. J.
CHOU, J.


(A171199)

9